**PIKE et al. v. WALKER, Postmaster General.**

No. 7697.

United States Court of Appeals for the District of Columbia.

Argued Dec. 6, 1940.

Decided March 17, 1941.

John A. Nash and Horace J. Donnelly, Jr., both of Washington, D. C., for appellants.

Edward M. Curran, U. S. Atty., and William S. Tarver, Asst. U. S. Atty., both of Washington, D. C., for appellees.

Before GRONER, Chief Justice, and VINSON and RUTLEDGE, Associate Justices.

GRONER, C. J.

The postal service statutes authorize the Postmaster General, "upon evidence satisfactory to him", to deny the right to receive mail to any person engaged in conducting any scheme or device for obtaining money or property through the mails by fraudulent representations or promises.[1] When the Postmaster General acts, he issues what is called a "fraud order", which commands the local postmaster to stamp the offender's mail "fraudulent" and return it to the senders.

Under the provisions of the statute, the Postmaster General, acting through the Solicitor of the Department, served appellants with a notice to show cause why a fraud order should not issue against them. A memorandum of charges accompanied the notice. Appellants appeared, filed an answer denying that they were guilty of any fraud, evidence was submitted on behalf of the Department and on their behalf, and the question whether they were guilty was argued. The hearing was then closed without findings or decision, and seven months later the order issued. At the hearing, Murray, an attorney in the office of the Solicitor of the Department, acted as presiding officer, and Connolly, another attorney in the same office, appeared for the Department. After the hearing was concluded, Murray had some private discussion with Connolly about the case, informed Connolly that he thought a case had been made, and requested Connolly to prepare

findings of fact to sustain that view. Connolly read the transcript and prepared findings, which Murray accepted with a few minor changes. This paper was not served upon the appellants or their counsel, nor were they even notified that findings had been made. The Acting Solicitor of the Department examined the record, read the brief, directed some changes in the findings, and affixed his signature thereto with a recommendation to the Postmaster General that a fraud order issue. The Postmaster General then satisfied himself that the recommendation had been signed by the Acting Solicitor, and thereupon signed and issued the order. He neither heard nor read any of the evidence, nor did he read or consider the appellants' answer or the brief filed in their behalf, and except that he "glanced through several pages of the findings of fact and recommendation and thereby acquainted himself with the nature of the scheme,"[2] he knew nothing of the controversy of his own knowledge. Appellants thereafter brought this suit in the United States District Court to restrain and enjoin the enforcement of the order, on the principal ground that the circumstances under which it issued deprived appellants of their right to due process of law. The trial court dismissed the complaint, on the ground that under the statute no hearing at all was required and that the Postmaster General had done nothing which made his decision "palpably wrong".

On this appeal, appellants insist that the failure to afford them the right to see and have access to the findings of fact prepared by the active prosecutor and the action of the Postmaster General in putting the fraud order into effect without reading or considering the testimony or hearing argument, or reading appellants' brief, was a denial of due process.

The Postmaster General, with commendable frankness, admits that the facts are as appellants say, but he takes the broad position that no individual has a natural or constitutional right to have his communications delivered by the postal establishment of the government, and hence that a fraud order may be issued summarily and without any notice or any hearing. Therefore, he insists that since no hearing is required, the courts are without power or authority to consider whether an adequate

---

[1] 39 U.S.C.A. §§ 259, 732.

[2] The findings reproduced in the record are approximately 18 pages of close-ly printed matter and probably in typewritten form were around 35 to 40 pages.

hearing was accorded. He also takes the further position that his action in issuing a fraud order is purely executive and discretionary; that in doing so he is not discharging a judicial function, and hence is under no obligation personally either to hear or examine the evidence, or to read or hear appellants' argument.

Public Clearing House v. Coyne [3] is principally relied on for this position, and it is quite true that there the Supreme Court said that the power vested in Congress by the Constitution to establish a postal system is permissive and therefore unlike the grant of power to defend the government against insurrection or foreign invasion or the obligation to protect the life, liberty, and property of the citizen. And from this it deduced the right of Congress to designate what may be carried in the mails and what excluded; to make distinctions between sealed and unsealed letters and packages; to restrict the use to letters and deny it to periodicals; to include periodicals and exclude books; to apply different rates of postage to different articles and prohibit some altogether; and, on the same principle, to forbid the delivery of letters to persons making use of the mails for fraudulent purposes. It may be safely stated, therefore, that no one can claim the right to use the mail for the transmission of matter which Congress has properly declared to be non-mailable, but we think it is equally clear, and is so stated in the Coyne case, that even Congress is without power to extend the benefits of the postal service to one class of persons and deny them to another of the same class. As was said in Burton v. United States, [4] the authority of the Post Office Department in the protection of the mail "has its sanction in the power of the United States, by legislation, to designate what may be carried in the mails and what must be excluded therefrom; such designation and exclusion to be, however, consistent with the rights of the people as reserved by the Constitution".

Precisely this view was expressed by Mr. Justice Brandeis in his dissenting opinion in United States ex rel. Milwaukee Publishing Co. v. Burleson, [5] in which he said the power of Congress over the postal system, "like all its other powers, is subject to the limitations of the Bill of Rights"; and by Mr. Justice Holmes in his dissenting opinion in Leach v. Carlile, [6] wherein he expressed the same thought in these words:

"But when habit and law combine to exclude every other [means of transportation of mail] it seems to me that the First Amendment in terms forbids such control of the post as was exercised here."

Whatever may have been the voluntary nature of the postal system in the period of its establishment, it is now the main artery through which the business, social, and personal affairs of the people are conducted and upon which depends in a greater degree than upon any other activity of government the promotion of the general welfare. Not only this, but the postal system is a monopoly which the government enforces through penal statutes forbidding the carrying of letters by other means. [7] It would be going a long way, therefore, to say that in the management of the Post Office the people have no definite rights reserved by the First and Fifth Amendments of the Constitution, and if they have, it would follow that in administering the laws established to protect the mail and the regulations thereunder the duty of the Postmaster General would be,— to use the language of Justice Brandeis in the Burleson case, supra,—that:

"In making the determination he must, like a court or a jury, form a judgment whether certain conditions prescribed by Congress exist, on controverted facts or by applying the law. The function is a strictly judicial one, although exercised in administering an executive office. And it is not a function which either involves or permits the exercise of discretionary power"— which is to say, that his authority is governed by the Acts of Congress which confer it, and by the law of the land.

So much as this we have said, not because it is necessary to a decision of the case, but because the proposition urged by the Postmaster General and accepted by the court below is too far reaching to be admitted until specifically recognized and declared by the Supreme Court. Here the

[3] 194 U.S. 497, 24 S.Ct. 789, 48 L.Ed. 1092.

[4] 202 U.S. 344, 371, 26 S.Ct. 688, 694, 50 L.Ed. 1057, 6 Ann.Cas. 362.

[5] 255 U.S. 407, 430, 41 S.Ct. 352, 360, 65 L.Ed. 704.

[6] 258 U.S. 138, 141, 42 S.Ct. 227, 229, 66 L.Ed. 511.

[7] 18 U.S.C.A. §§ 306, 308.

facts make it unnecessary to anticipate this contingency. We have a case in which the alleged wrongdoers were given due notice of the charge of violation of the mail fraud statutes; were given a hearing at which they were represented by counsel; and were permitted the fullest latitude in making their defense before the trial examiner. And even if we assume the manner of making up the findings of facts was improper and the failure of the Postmaster General to acquaint himself with the evidence before signing the fraud order was irregular, we are still of opinion that some prejudice must be shown to have resulted to appellants to justify us in issuing the writ of injunction. To warrant a court in taking such action, it should be averred and shown that there is, at least, a reasonable doubt on the merits. In bringing their suit in the District Court for a review of the decision of the Postmaster General, appellants had a full and free opportunity to show that the complaint against them was unfounded. It is quite true the measure of proof required to upset the order of the Postmaster General is greater than that which would be required in a de novo trial of guilt in a court of law; and consequently if the proof of guilt here had been such as to which reasonable men might differ, the irregularity in the administrative proceeding, if there was irregularity, would have presented the case in a different aspect and made necessary a decision on the constitutional question as to which we express no opinion. But appellants in the lower court satisfied themselves as to this phase of the case by filing the transcript of testimony taken in the proceeding in the Department, and the judge of the trial court examined that testimony and reached the conclusion, and so found as a fact, that there was ample evidence tending to show the fraudulent nature of plaintiffs' scheme. Appellants chose not to include the transcript of testimony in the record on appeal, and in these circumstances we must assume and, so assuming, hold that the finding of the trial judge that the scheme was fraudulent was in all respects correct. In such circumstances, to issue an injunction the effect of which will be to set aside and annul the proceedings in the Department and afford relief to appellants notwithstanding their wrongdoing, would be, we think, the unwise exercise of our discretion. We, therefore, affirm the judgment of the court below on the sole ground that the appeal is without merit for the single reason we have stated.

Affirmed.