DOEHLA GREETING CARDS, Inc. et al.
v. SUMMERFIELD et al.

Civ. A. No. 4469-53.

United States District Court
District of Columbia.

Oct. 23, 1953.

David G. Macdonald, Washington, D. C., for plaintiff.

John F. Baecher, E. Riggs McConnell, John H. D. Wigger, Sp. Assts. to the Atty. Gen., H. G. Morrison, Asst. to the Atty. Gen., James E. Kilday, Sp. Asst. to the Atty. Gen., George Morris Fay, U. S. Atty., Washington, D. C., for defendant United States.

Daniel W. Knowlton, Chief Counsel, H. L. Underwood, Asst. Chief Counsel, C. H. Johns, Atty., Interstate Commerce Commission, Washington, D. C., for defendant Interstate Commerce Commission.

Roy C. Frank, Sol., Louis J. Doyle, Associate Sol., Paul Meninger, Atty., Post Office Department, Washington, D. C., for defendant Jesse M. Donaldson, Postmaster General.

William A. Roberts, Morton R. Galane, Washington, D. C. (Roberts & McInnis, Washington, D. C., of counsel), for plaintiffs.

Leo A. Rover, U. S. Atty., Oliver Gasch, Frank H. Strickler, Asst. U. S. Attys., Washington, D. C. (Warren E. Burger, Asst. Atty. Gen., Edward. H. Hickey, Chief, General Litigation Section, E. Riggs McConnell, Atty., Department of Justice, Ross Rizley, Sol., Frederick Batrus, Associate Sol., Paul Meininger, Atty., Post Office Department, Edward M. Reidy, Chief Counsel, Interstate Commerce Commission, Washington, D. C., of counsel), for defendants.

KEECH, District Judge.

This is an action to enjoin enforcement of increased parcel post zone rates as embraced within the order entitled Revision of Rates on Certain Fourth Class Mail, 18 F.R. 3967, effective October 1, 1953. The plaintiffs bring the action in their own behalf and on behalf of other users of the parcel post service similarly situated. The Postmaster General and the members of the Interstate Commerce Commission are sued as individuals and not in their official capacity. The case is before the court on the plaintiffs' motion for preliminary injunction and the defendants' motion to dismiss.

Summarized, the complaint alleges that the plaintiffs are users of the parcel post service who will be compelled to pay the increased rates; that the new rate order was promulgated without re-

gard to the statutory limitations on the authority of the Postmaster General and Interstate Commerce Commission; that the Interstate Commerce Commission's investigation prior to its consent to the rate increases proposed by the Postmaster General was had without affording adequate notice or hearing to interested parties; that the order is arbitrary, capricious, discriminatory, and unsupported by the record; and that it deprives the plaintiffs of property without due process of law, in violation of their constitutional rights. The plaintiffs, distributors of greeting cards by direct selling, allege that enforcement of the increased parcel post zone rates will be seriously destructive and in some instances disastrous to their businesses; that the increased rate is so excessive in amount that it cannot be absorbed in their narrow margin of gross profit or transferred to the consumer; that no practicable alternative means of delivery is available to small towns and rural areas not served by transportation facilities other than parcel post; that, to the extent that physical facilities exist for diversion of shipments normally carried by parcel post, imposition of the alleged unlawful and excessive rates will result in major diversion of the parcel post traffic without commensurate opportunity for reduction of the expense of the postal service, and, correspondingly, in an irreparable and extensive financial loss to the United States and progressive deterioration and destruction of the parcel post service to the injury of the plaintiffs.

The basic statute governing the Postmaster General's power to fix parcel post rates is § 207 of the Act of February 28, 1925, as amended, 43 Stat. 1067, as amended by 45 Stat. 942, 39 U.S.C.A. § 247, which reads:

"The classification of articles mailable, as well as the weight limit, the rates of postage, zone or zones, and other conditions of mailability under sections 240, 293, and 294 of this title if the Postmaster General shall find on experience that they or any of them are such as to prevent the shipment of articles desirable, or to permanently render the cost of the service greater than the receipts of the revenue therefrom, he is hereby directed, subject to the consent of the Interstate Commerce Commission after investigation, to re-form from time to time such classifications, weight limit, rates, zone or zones, or conditions, or either, in order to promote the service to the public or to insure the receipt of revenue from such service adequate to pay the cost thereof."

The other related statute, enacted September 27, 1950, as part of a supplemental appropriation act, 64 Stat. 1050, § 101, 31 U.S.C.A. § 695, provides:

"Hereafter, none of the funds appropriated to the Post Office Department from the general fund of the Treasury shall be withdrawn from the Treasury until the Postmaster General shall certify in writing that he has requested the consent of the Interstate Commerce Commission to the establishment of such rate increases or other reformations (in addition to any specific increases or other reformations heretofore or hereafter authorized or prescribed by law), pursuant to the provisions of section 247 of Title 39, as may be necessary to insure the receipt of revenue from fourth-class mail service sufficient to pay the cost of such service: *Provided*, That the foregoing shall not be construed to require any increase in the postage rate, established by section 293c of Title 39, for publications or records furnished to a blind person."

The plaintiffs interpret the basic act to require the Postmaster General, in reforming the fourth class mail rates on a cost basis, to find that the current rates are such as to "*permanently* render the cost of the service greater than the receipts of the revenue therefrom," and to consider both promotion of the service to the public and the amount of revenue necessary to pay for the cost of the serv-

72

ice. It is the plaintiffs' position that the 1950 appropriation act rider did not change the basic provisions of the statute, but merely directed the Postmaster General to exercise authority already conferred.

The plaintiffs allege that in proposing the October 1, 1953, increase the Postmaster General acted outside these statutes in that (1) he did not find that the former rates were such as to *permanently* render the cost of service greater than the receipts therefrom and (2) the rate increase was determined on the basis of the need for revenue without considering the element of public service. The plaintiffs further allege that the Postmaster General acted arbitrarily and capriciously in severing consideration of the parcel post zone rates from that of rates on catalogs and controlled circulation publications, other subclassifications of fourth class mail. The plaintiffs contend that the members of the Interstate Commerce Commission acted arbitrarily and capriciously and beyond their authority in failing to make an "investigation" conforming to the usual rate-making type of investigation and in consenting to a rate increase which was not supported by the record.

Plaintiffs allege that this court has jurisdiction of the case under either 28 U.S.C.A. § 1339, which gives the district courts jurisdiction of cases involving the postal laws, or 5 U.S.C.A. § 1009, the section of the Administrative Procedure Act providing for judicial review.

The defendants move to dismiss the complaint on the following grounds: (1) The complaint does not present a justiciable controversy over which the court has jurisdiction; (2) the plaintiffs have no standing to maintain suit; (3) the court has no jurisdiction over the subject matter of the suit, in that it is in effect a suit against the United States to which the United States has not consented; (4) the court is without juris-

diction to review a discretionary act of the defendants, and (5) the plaintiffs have failed to join an indispensable party, the Postmaster General. On behalf of the individual members of the Interstate Commerce Commission, the further ground is stated that the matter is moot, since they have exhausted their power and have nothing pending before them in connection with the rate order in question.

As to the first and second grounds of their motion to dismiss, the defendants rely on the principle that in order to contest the validity of administrative action, plaintiffs must show that such action invades a private substantive legally protected interest recognized by common law or created by statute, as distinguished from the public's interest in the administration of law. Defendants argue that there is no question here of depriving an individual of the right to use the mails; that the increased rates apply equally to all users of the parcel post similarly situated; that the plaintiffs have no vested legal rights in the continuance of any particular schedule of rates for parcel post deliveries; that even though plaintiffs suffer financial loss through the rate increases, without an invasion of some legally protected interest, the plaintiffs' injury is damnum absque injuria. The correctness of the legal principle cannot be challenged.

The real question presented by the complaint is whether the plaintiffs have alleged an invasion of a legally protected right. The defendants cite a number of cases holding that the United States has a proprietary right and interest in the postal service,[1] from which they conclude that the establishment of rates for carrying mail is a strictly proprietary function and within the absolute discretion of the Postmaster General.

Although no case has been called to the court's attention in which it has been held that citizens have a constitutional

1. Searight v. Stokes, 1845, 3 How. 151, 11 L.Ed. 537; In re Debs, 1894, 158 U.S. 564, 15 S.Ct. 900, 39 L.Ed. 1092; Boeing Air Transport, Inc., v. Farley, 1935, 64 App.D.C. 162, 75 F.2d 765.

right to reasonable mail rates, in cases passing on the right of the Postmaster General to withhold mail service, the courts have stated that grave constitutional questions are immediately raised once it is said that the use of the mails is a privilege which may be extended or withheld on any grounds whatsoever.[2]

■■ As stated by our Court of Appeals in Pike v. Walker, 1941, 73 App. D.C. 289, 121 F.2d 37, 39, certiorari denied 314 U.S. 625, 62 S.Ct. 94, 86 L.Ed. 502:

" * * * it is quite true that * * * (in Public Clearing House v. Coyne, 194 U.S. 497, 24 S.Ct. 789, 48 L.Ed. 1092) * * * the Supreme Court said that the power vested in Congress by the Constitution to establish a postal system is permissive and therefore unlike the grant of power to defend the government against insurrection or foreign invasion or the obligation to protect the life, liberty, and property of the citizen. And from this it deduced the right of Congress to designate what may be carried in the mails and what excluded; to make distinctions between sealed and unsealed letters and packages; to restrict the use to letters and deny it to periodicals; to include periodicals and exclude books; to apply different rates of postage to different articles and prohibit some altogether; and, on the same principle, to forbid the delivery of letters to persons making use of the mails for fraudulent purposes. It may be safely stated, therefore, that no one can claim the right to use the mail for the transmission of matter which Congress has properly declared to be non-mailable, but we think it is equally clear, and is so stated in the Coyne case, that *even Congress is without power to extend the benefits of the postal service to one class of persons and deny them to another of the same class.* As was said in Burton v. United States, 202 U.S. 344, 371, 26 S.Ct. 688, 694, 50 L.Ed. 1057, the authority of the Post Office Department in the protection of the mail 'has its sanction in the power of the United States, by legislation, to designate · what may be carried in the mails and what must be excluded therefrom; *such designation and exclusion to be, however, consistent with the rights of the people as reserved by the Constitution'.*

"Precisely this view was expressed by Mr. Justice Brandeis in his dissenting opinion in United States ex rel. Milwaukee Publishing Co. v. Burleson, in which he said *the power of Congress over the postal system, 'like all its other powers, is subject to the limitations of the Bill of Rights';* * * *.

"Whatever may have been the voluntary nature of the postal system in the period of its establishment, it is now the main artery through which the business, social, and personal affairs of the people are conducted and upon which depends in a greater degree than upon any other activity of government the promotion of the general welfare. * * * *It would be going a long way, therefore, to say that in the management of the Post Office the people have no definite rights reserved by the First and Fifth Amendments of the Constitution * * *.*" (Emphasis supplied.)

■■ Assuming, as the court must for the purpose of the motion to dismiss, that the allegations of the complaint are

2. Hannegan v. Esquire, Inc., 1946, 327 U.S. 146, 156, 66 S.Ct. 456, 90 L.Ed. 586, citing dissenting opinions of Justice Holmes and Justice Brandeis in U. S. ex rel. Milwaukee Social Democratic Publishing Co. v. Burleson, 1921, 255 U.S. 407, 421–423, 430–432, 437–438, 41 S.Ct. 352, 65 L.Ed. 704; Burton v. United States, 1906, 202 U.S. 344, 371, 26 S. Ct. 688, 50 L.Ed. 1057.

true,[3] and that the arbitrary and capricious fixing of excessive parcel post zone rates will effectively exclude the plaintiffs from the benefits of the postal service, there would be the same type of invasion of legally protected rights as was recognized in Columbia Broadcasting System, Inc. v. United States, 1942, 316 U.S. 407, 62 S.Ct. 1194, 86 L.Ed. 1563. In that case, although the policy of the Federal Communications Act, 47 U.S.C.A. § 151 et seq., is clear that no person shall have anything in the nature of a property right as the result of the granting of a radio station license,[3a] the Supreme Court held that a radio network whose business was dependent upon renewal of station licenses, had standing to maintain a suit to enjoin enforcement of license regulations adversely affecting the network's contractual rights and business relations with station owners, on the grounds, among others, that the order was beyond the Commission's statutory authority and operated to deprive the network of property without due process of law in violation of the Fifth Amendment. It was there held that the right to maintain the suit was unaffected by the fact that the regulations were not directed to the network and did not in terms compel action by it or impose penalties upon it because of its action or failure to act, but that it was enough that the regulations purported to alter and affect adversely the network's contractual rights and business relations with the station owners.

 This court does not mean to say that any individual or business has a right to the maintenance of any particular postal rates, or rates that will enable them to make a profit, or even rates not in excess of the cost of the service. In view of the two purposes stated in 39 U.S.C.A. § 247, the Post-

master General has a right to fix rates not only for the purpose of recovering the cost of service but also with a view to promoting the service to the public. Any *reasonable* exercise of discretion directed to attainment of either of these ends, even though it result in one subclassification's bearing more than the cost of service to it, while another subclassification is favored by a less than cost rate, would fall within the Postmaster's statutory authority. But, as stated in Jones v. Securities and Exchange Commission, 1936, 298 U.S. 1, 24, 56 S.Ct. 654, 661, 80 L.Ed. 1015, "Arbitrary power and the rule of the Constitution cannot both exist"; and the fixing of arbitrary and discriminatory postal rates without any rational basis and so excessive as to effect an exclusion from the benefits of postal service, would constitute action outside the authority of the Postmaster General in violation of the plaintiffs' rights under the due process clause of the Constitution.

 As to the third ground of the motion to dismiss, namely, that this is a suit against the United States in which the United States has not consented to be sued, since the complaint alleges that the Postmaster General has acted outside his statutory authority this is a suit against the individual official and not a suit against the United States.[4]

 As to the fourth ground of the motion to dismiss, that the court is without jurisdiction to review a discretionary act of the defendants, the pertinent statutes, 39 U.S.C.A. § 247 and 31 U.S.C.A. § 695, do not confer on the Postmaster General absolute discretion to fix postal rates free of any judicial review. Not only is the discretion subject to constitutional limitations, but the basic statute prescribes the conditions under which

---

3. As the case is before the court on a motion to dismiss, no determination need be made, and none has been made, on the merits of the case.

3a. Ashbacker Radio Corp. v. Federal Communications Commission, 1945, 326 U.S. 327, 331, 66 S.Ct. 148, 90 L.Ed.

108; Federal Communications Commission v. Sanders Brothers Radio Station, 1940, 309 U.S. 470, 475, 60 S.Ct. 693, 84 L.Ed. 869, 1037.

4. Larson v. Domestic and Foreign Commerce Corp., 1949, 337 U.S. 682, 701–702, 69 S.Ct. 1457, 93 L.Ed. 1628.

the Postmaster may reform rates and the purposes for which he may do so.

This court holds that the provisions of the basic act are unchanged by the 1950 rider, which merely directed the Postmaster General to exercise his authority

"if he shall find on experience that * * * (the classification of articles mailable, the weight limit, the rates of postage, zone or zones, and other conditions of mailability) * * * are such as * * * to permanently render the cost of the service greater than the receipts of the revenue therefrom, * * * subject to the consent of the Interstate Commerce Commission after investigation, to re-form from time to time such classifications, weight limit, rates, zone or zones, or conditions, or either, in order * * * to insure the receipt of revenue from such service adequate to pay the cost thereof."

The court further holds that the plain language of 39 U.S.C.A. § 247 shows that the Postmaster *may* reform the postal rates to meet the cost of service without consideration of the element of public service, since the two purposes are stated in the disjunctive. The plaintiffs' charge of action by the Postmaster outside the statute on this ground therefore fails.

There remain, however, the allegations that the Postmaster acted without finding that the prior rates were "such as to *permanently* render the cost of the service greater than the receipts of revenue therefrom" and that the rate order is arbitrary, capricious, and contrary to the evidence. On these allegations, the plaintiffs are entitled to judicial review as to whether the Post-

master General has acted within the discretion conferred upon him by statute.[5]

As to the charge of unlawful conduct on the part of the members of the Interstate Commerce Commission, namely, that the hearing conducted prior to their consent to the Postmaster's order did not conform to the usual rate-making procedure, the statute does not prescribe the type of "investigation" to be made prior to consent by the Interstate Commerce Commission. Since the fixing of postal rates differs basically from the fixing of public utility rates, it is not reasonable to assume the statute requires the same type of rate investigation. The hearing provisions of the Administrative Procedure Act, 60 Stat. 238, § 4, 5 U.S.C.A. § 1003, do not apply, as mail rates are within the second exception, "any matter relating to agency management or personnel or to public property, loans, grants, benefits, or contracts". The complaint on its face shows that the plaintiffs were given notice and were heard at length.

There remain as to the members of the Interstate Commerce Commission the allegations that they acted arbitrarily and capriciously in their conduct of the hearing and in consenting to rate increases contrary to the evidence in the record.

This is a suit arising under the postal laws within the jurisdiction of the district courts under 28 U.S.C.A. § 1339.[6] Before enactment of the Administrative Procedure Act the plaintiffs would have been entitled to maintain a bill to enjoin unlawful administrative action such as here alleged,[7] and the suit is one permitted under 5 U.S.C.A. § 1009, since the agency action does not come within the exceptions, "so far as (1) statutes preclude judicial review or (2)

---

5. The complaint in the instant case is distinguishable, both on the facts alleged and legal issues involved, from that in Spiegel, Inc. v. United States, D.C.D.C., 116 F.Supp. 67, a suit to enjoin enforcement of increased fourth class parcel post rates, dismissed by Judge Letts September 27, 1951.

6. United States v. Griffin, 1938, 303 U.S. 226, 58 S.Ct. 601, 82 L.Ed. 764; Fite v. Payne, D.C.Tex.1950, 91 F.Supp. 21, reversed on other grounds 5 Cir., 184 F.2d 977.

7. American School of Magnetic Healing v. McAnnulty, 1902, 187 U.S. 94, 23 S.Ct. 33, 47 L.Ed. 90.

agency action is by law committed to agency discretion."

The fifth ground of the motion to dismiss, that the plaintiffs have failed to join an indispensable party, the Postmaster General, is well taken. The defendant Summerfield is sued as an individual in a complaint which seeks to restrain enforcement of an order of the Postmaster General. The only person with authority to enforce the rates or to revoke the order is the Postmaster General in his official capacity. The complaint must therefore be dismissed as to the defendant Summerfield for failure to name an indispensable party.[8]

The complaint must be dismissed as to the individual members of the Interstate Commerce Commission on the same ground, and for the additional reason that the subject matter of the suit is moot as to them.

For the foregoing reasons the court will grant the defendants' motion to dismiss and deny the plaintiffs' motion for preliminary injunction. Counsel will present promptly an appropriate order.

---

8. This court interprets the reference in Larson v. Domestic and Foreign Commerce Corp., supra, 337 U.S. page 702, 69 S.Ct. page 1467, to "a suit for a specific relief against the officer as an individual" to mean a suit against the individual officer in his official capacity where necessary to effect the relief sought, as distinguished from a suit against the officer which is in effect a suit against the United States.