**BIG TABLE, INC.**

v.

**Carl A. SCHROEDER, United States Postmaster for Chicago, Illinois.**

**No. 59 C 1382.**

United States District Court
N. D. Illinois.
June 30, 1960.

Joel J. Sprayregen, Chicago, Ill., for plaintiff.

R. Tieken, U. S. Atty., Charles R. Purcell, Jr., Asst. U. S. Atty., Chicago, Ill., for defendant.

JULIUS J. HOFFMAN, District Judge.

The dispositive question in this action is whether the magazine "Big Table I" is obscene, but a necessary preliminary to that inquiry, as it is raised here, is a resolution of whether the judicial review of a Post Office order, barring matter from the mails on such ground, is subject to and adequately provided for by the Administrative Procedure Act, 5 U.S.C.A. § 1009. That issue is implicit in the clash between the opposing motions for summary judgment which are before the court for its consideration.

The plaintiff, an Illinois corporation, is the publisher and distributor of "Big Table," a quarterly publication in the nature of a literary review, of which the number in suit was the first. The defendant United States Postmaster for Chicago, Illinois, refused to accept "Big Table I" for mailing pursuant to a departmental order determining that two articles contained therein were obscene and filthy and, therefore, non-mailable under the statutory declaration found in Title 18, Section 1461, of the United States Code.

The complaint which initiated the present action sought both injunctive relief from the operation of the order and a declaratory judgment that the magazine was not obscene or filthy, that the defendant's acts were unauthorized by statute as well as in violation of the First and Fifth Amendments to the Constitution of the United States, and that the seizure and impounding of the publication without notice or prior hearing did not afford due process of law.

Jurisdiction was properly asserted under 28 U.S.C. § 1339, which grants the district courts original jurisdiction of any civil action arising under federal statutes relating to the postal service, and under 5 U.S.C.A. § 1009, which authorizes judicial review of administrative decisions.

The defendant's pending motion states that judgment on the complaint must be entered in his favor if the agency action was supported by substantial evidence in the administrative record. What the plaintiff seeks is a finding de novo by the court in regard to the matter of obscenity, and its argument is based primarily on the premise that the agency action has no finality in this area because of the constitutional issues involved. Hence, the cross-motion for summary judgment asks for decision on substantially the same grounds as those advanced in the complaint. However, it is not necessary to decide the constitutional objections in reaching a conclusion in this case.[1]

■■ That summary judgment is appropriately invoked is clear. No issue of fact may be entertained in reviewing an administrative proceeding under the standards set forth in the Administrative Procedure Act, 5 U.S.C.A. § 1009, unless the facts are subject to a trial de novo. Even assuming that a trial de novo as to the fact of obscenity were required, summary judgment would still be proper because the material evidence, the contents of the writings themselves, is undisputed. And, for good measure, there is also contained in the administrative record on which the parties submit, testimony and exhibits that bear on the literary merit of the articles, the intent of their authors, and like matters which have been said to be relevant and perhaps necessary to the decision to be rendered in an obscenity case. See the concurring opinion of Justice Frankfurter and the part concurrence and part dissent of Justice Harlan in Smith v. California, 1959, 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205.[2]

The legal issue, framed by the motions, which is posed first for consideration is the matter, previously referred to, of the parties' differing constructions of the court's scope of factual review where the possibility of obscenity was the impetus to the disputed administrative action.

■■ The defendant is correct in his contention that the court is bound by the "substantial evidence" rule in this action. The following cases amply demonstrate that administrative orders by the Post Office, including those dealing with obscenity, are subject to the provisions of the Administrative Procedure Act. Cates v. Haderlein, 1951, 342 U.S. 804, 72 S.Ct. 47, 96 L.Ed. 609; Door v. Donaldson, 1952, 195 F.2d 764; Cadillac Publishing Co. v. Summerfield,

1. The plaintiff's arguments include the familiar objection of "prior restraint" by the Post Office as well as the contention that the long delay between seizure, notice, hearing and final decision constituted a denial of due process. These questions have been raised before and have not been answered with any finality. See Walker v. Popenoe, 1945, 80 U.S.App.D.C. 129, 149 F.2d 511; Roth v. Goldman, 2 Cir., 1949, 172 F.2d 788, certiorari denied 337 U.S. 938, 69 S.Ct. 1514, 93 L.Ed. 1743; Sunshine Book Company v. Summerfield, 1957, 101 U.S.App.D.C. 358, 249 F.2d 114, reversed 1958, 355 U.S. 372, 78 S.Ct. 365, 2 L.Ed.2d 352; Grove Press, Inc. v. Christenberry, 2 Cir., 1960, 276 F.2d 433.

2. In Poss v. Christenberry, D.C.S.D.N.Y. 1959, 179 F.Supp. 411, summary judgment of a Post Office block order against allegedly obscene material under 39 U.S.C. § 259a was refused on the ground that the absence of any evidence related to contemporary community standards, not just literary considerations, raised a question of fact. In the instant case, testimony of that nature was excluded by the Hearing Examiner. His so doing is not demonstrably in error, particularly if the current basis for judging obscenity, as announced in Roth v. United States, 1957, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498, is followed strictly. Under that test, the implication is that since the trier of facts in reaching his decision is to apply contemporary community standards, as would an average man, he therefore is presumably regarded as cognizant of those standards without the aid of the hearsay opinions and conclusions of others.

1955, 97 U.S.App.D.C. 14, 227 F.2d 29, certiorari denied 350 U.S. 901, 76 S.Ct. 179, 100 L.Ed. 791; Cadillac Publishing Co. v. Summerfield, D.C.D.C.1957, 155 F. Supp. 313, jdmt. vacated as moot, 1958, 105 U.S.App.D.C. 343, 267 F.2d 620.[3]

It follows, therefore, that the "substantial evidence" rule, which provides that the court may set aside or compel agency action on review if it was unsupported by substantial evidence on the record below viewed as a whole, 5 U.S. C.A. § 1009(e) (5), cannot be read out of the Act, as the plaintiff requests, simply because the order is contested on a claim of constitutionally protected speech, or because the initial findings of obscenity are often reversed on review. Nor has that been done. Bonica v. Olesen, D.C.S.D.Cal.1954, 126 F.Supp. 398.

While persuasive arguments have been made by the plaintiff for the proposition that the court must evaluate the accused writing or other form of expression for itself, if that position were accepted, the result would be not only to deny well-established precedent but to exceed the bounds of judicial review provided by the statute needlessly.

■ What constitutes obscenity is a question of fact, Roth v. United States, 1957, 354 U.S. 476, 77 S.Ct. 1304. Assuming that authority to ascertain that fact has been properly granted to the administrative agency, the court must accept the conclusion reached by that body if it is supported by substantial evidence and not in disregard or violation of the other standards to be applied on review.

There is no basis for invoking the exception to the rule which provides for a trial de novo in some instances since the facts on which obscenity is alleged or contested do not fall within that class of "constitutional facts" which are awarded the exception by the Act, e.g., facts relative to the jurisdiction of the agency or facts possibly excluded by ex parte hearings.

Simply because a denial of constitutional rights is claimed does not command a finding de novo, since by reviewing the record as a whole and in the light of constitutional objections where necessary to decision, the court, by adhering to the substantial evidence rule, does give the facts that re-examination required when constitutional rights are invoked. An analogy may be drawn from the principles used in appellate review in such an instance. For example, as was said in Niemotko v. Maryland, 1951, 340 U.S. 268, 271, 71 S.Ct. 325, 327, 95 L.Ed. 267, "(I)n cases in which there is a claim of denial of rights under the Federal Constitution, this Court is not bound by the conclusions of lower courts, but will reexamine the *evidentiary basis* on which those conclusions are founded." (Emphasis supplied.) Similarly, in Joseph Burstyn, Inc. v. Wilson, 1952, 343 U.S. 495, 506–507, 72 S.Ct. 777, 783, 96 L.Ed. 1098, a movie censorship case, Justice Reed stated in his concurring opinion that "our duty requires us to examine the facts of the refusal of a license in each case to determine whether the principles of the First Amendment have been honored."

Those opinions do not prescribe a finding de novo but, rather, accord a broader than usual inquiry on appellate review, an appraisal comparable in kind to that required under the Administrative Procedure Act.

Thus, application of the "administrative finality" doctrine to Post Office findings on obscenity has never been denied, until the recent opinion of the Court of Appeals for the Second Circuit in Grove Press, Inc. v. Christenberry, 2 Cir., 1960, 276 F.2d 433, 436. In that case which involved the celebrated "Lady Chatterley's Lover," the question of obscenity on review was said to be one "starkly of law." The court therein agreed with the conclusion drawn below, that since there was no disputed evidence, the "substantial evidence" rule had no application. However, as defined by the Supreme

---

3. The latter two cases involved obscenity block orders under 39 U.S.C.A. § 259a.

Court in reference to review of *any* administrative proceeding, " 'substantial evidence * * * means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " Universal Camera Corp. v. N. L. R. B., 1951, 340 U.S. 474, 477, 71 S.Ct. 456, 95 L.Ed. 456.

The Grove Press affirmance [276 F.2d 435], in rejecting the argument of "finality," also cited the "constitutional overtones implicit" in obscenity issues and the necessity of granting a full review of the facts when a denial of constitutional rights is claimed.[4] That the determination of obscenity requires a "constitutional judgment" was the stand taken by Justice Harlan in dissenting from the majority holding that it is a question of fact, in Roth v. United States, 1957, 354 U.S. 476, 497, 77 S.Ct. 1304.

Even if that view were adopted, it is doubtful whether a more thorough search of the record would be conducted by the reviewing court than is now the case, which, after all, is the objective sought by the demand for a finding de novo. But, it should be clearly stated, that since obscenity has been held to be an issue of fact, there can be no independent conclusion by the court in the granting of review to agency action subject to the Administrative Procedure Act. O'Dwyer v. C. I. R., 4 Cir., 1959, 266 F. 2d 575; In re Cartellone, 148 F.Supp. 676 (N.D.Ohio 1957), affirmed Carlellone v. Lehmann, 6 Cir., 255 F.2d 101, certiorari denied 1958, 358 U.S. 867, 79 S.Ct. 99, 3 L.Ed.2d 99.

In sum, an administrative determination, when warranted by the record viewed as a whole and with a reasonable basis in law, will not be interfered with. Universal Camera Corp. v. N. ·L. R. B., 1951, 340 U.S. 474, 71 S.Ct. 456; United States ex rel. Rongetti v. Neelly, 7 Cir., 1953, 207 F.2d 281. However, as the statement just made indicates, the court is not bound to affirm an order merely because the conclusion of ultimate fact on which it is based is supported by substantial evidence. If the articles herein involved were properly found obscene, the court might well be required to disapprove the non-mailability order on the other grounds enumerated in the Administrative Procedure Act, and which have been cited by the plaintiff herein.[5]

4. But see the discussion supra in the text of this memorandum distinguishing a full review from a finding de novo.

The lack of Post Office expertise in this area was also mentioned by the Court of Appeals but, again, that is not a valid ground for refusing to apply the "substantial evidence" rule. Rather, it goes to the weight of the findings. Universal Camera Corp. v. N.L.R.B., 1951, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456. The plaintiff's argument in its brief that the standards and interpretations set forth in the case just cited are not authoritative in relation to agency action of a non-expert sort cannot be countenanced since Justice Frankfurter, the author of that opinion, makes it clear that he is speaking of any agency action.

5. However, it is not improper at this point to allude at least to one of the difficult questions of law, begging for decision, which has been raised in this action that is unfortunately an inappropriate one for that claim.

That query is, whether the Post Office is authorized by statute to bar obscene matter from the mails in the exercise of its executive function to administer the laws pertaining to the postal service, under 5 U.S.C.A. §§ 22, 369, and pursuant to a declaration that obscenity is non-mailable which is contained only in a criminal statute, viz., 18 U.S.C. § 1461.

Compare the provisions of 39 U.S.C.A. § 259a specifically authorizing the issuance of block orders on incoming mail on such ground; but also see 18 U.S.C. § 1717, dealing with treasonable material, under which the administrative power has also been employed without particular provision. Other statutes excluding certain matter from the mails but which expressly provide for administrative regulations are Sections 1463, 1715 and 1718 of Title 18, United States Code.

The Supreme Court has not passed on the matter directly although it has been suggested for decision. See the concurring opinion of Judge Frank in Roth v. Goldman, 2 Cir., 1949, 172 F.2d 788, certiorari denied 337 U.S. 938, 69 S.Ct. 1514, 93 L.Ed. 1743. The language used in Ex parte Jackson, 1877, 96 U.S. 727, 24 L.Ed. 877, in referring to the meaning of § 334, the phrasing of which is repeated in § 1461 here involved, does not defi-

■ But that is not the case since the conclusion reached by the Post Office that "Big Table I" is obscene was not supported by substantial evidence on the record viewed as a whole and therefore must be set aside.

■ In order to evaluate the record before the agency, it is essential to comprehend the legal concept of obscenity. According to the authoritative pronouncement in Roth v. United States, 1957, 354 U.S. 476, 487, 77 S.Ct. 1304, 1310, "obscene material is material which deals with sex in a manner appealing to prurient interest." In also defining its language to mean "material having a tendency to excite lustful thoughts," the Court further noted that it could see no difference between the meaning of obscenity under the approved case-law and that adopted by the drafters of the Model Penal Code, wherein "prurient" was equated with a "shameful or morbid interest in nudity, sex, or excretion." [6] The provision cited by the Court says that a thing is obscene when its dominant appeal is to the prurient interest and "if it goes substantially beyond customary limits of candor in description or representation of such matters." [7] A.L.I.

nitely establish that the declaration of non-mailability was intended to be enforced apart from the criminal sanction. Hannegan v. Esquire, Inc., 1946, 327 U.S. 146, 66 S.Ct. 456, 90 L.Ed. 586, should be compared for its emphasis on confining the power of Congress and the Post Office to punish or deny the use of the mails. See also in that regard the dissent of Justice Brandeis v. U. S. ex rel. Milwaukee Social Dem. Pub. Co. v. Burleson, 255 U.S. 407, 424, 41 S.Ct. 352, 65 L.Ed. 704.

But, in Roth v. United States, 1957, 354 U.S. 476, 493, note 32, 77 S.Ct. 1304, the majority recognized by implication that Congress may require the Post Office to exclude obscene matter from the mails. And see Sunshine Book Co. v. Summerfield, 1957, 101 U.S.App.D.C. 358, 249 F.2d 114, reversed per curiam on Roth v. United States at 1958, 355 U.S. 372, 78 S.Ct. 365, 2 L.Ed.2d 352, wherein the majority held that the Post Office must deny access under § 1461, but the strong dissent on the validity of that reasoning is also significant. Similarly, see One, Inc. v. Olesen, 9 Cir., 1957, 241 F.2d 772, also reversed per curiam on Roth v. United States at 1958, 355 U.S. 371, 78 S.Ct. 364, 2 L.Ed.2d 352, in which the lower court had characterized § 1461 as providing for "no more than * * * a prosaic and everyday matter of the administration of the Post Office Department." The Court of Appeals for the Second Circuit in its "Lady Chatterley's Lover" opinion did not reach the question but, nevertheless, found it of sufficient import to warrant its being noted as an issue of "serious difficulty." Grove Press, Inc. v. Christenberry, 2 Cir., 1960, 276 F.2d 433, 437.

6. This statement was amplified by the explanation that "the prurient interest is an exacerbated, morbid or perverted interest growing out of the conflict between the universal sexual drive of the individual and equally universal social controls of sexual activity."

The Post Office Judicial Officer who rendered the final departmental decision in this case said that he agreed with the Hearing Examiner's conclusion that the material was obscene "only because" of the Institute's definition of "prurient." He then characterized the articles involved as portraying "sexual matters and subjects in a most exacerbated, morbid and perverted manner."

But, it seems obvious, that use of the definitive language to describe a manner of expression does not require only a single inference, i.e., that the material does appeal to the prurient interest, since such a method possibly could be employed without any prurient effect.

7. The Hearing Examiner herein held that "Big Table I" was obscene because it went beyond the prevailing limits of candor but he ruled that it could not appeal to the prurient interest. This construction was correctly repudiated by the Final Decision but some significance should be attached to the initial ruling on pruriency. In that regard see Universal Camera Corp. v. N.L.R.B., 1951, 340 U.S. 474 71 S.Ct. 456, 469, which advises that the findings of the hearing examiner are to be considered, along with "the consistency and inherent probability" of the testimony before him. It may be noted that although a hearing examiner in obscenity actions cannot be said to be possessed of any particular technical expertise, he does see and inspect all degrees and brands of erotic literature. Perhaps, that implies, however, that he has acquired a more sophisticated viewpoint through exposure than the average man, the judge of such facts under the Roth test, would have.

Model Penal Code, § 207.10(2) (Tent. Draft No. 6, 1957).

The standard by which accused material is to be judged was stated quite simply in the Roth opinion, as follows:

"* * * whether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest." 1957, 354 U.S. 476, 489, 77 S.Ct. 1311.

And, the Post Office rendered its decision now in question within the framework of the legal requirements just described. But the reviewing court's responsibility to perform the conventional judicial function does not stop with that discovery. It must still re-examine the facts and its responsibility is "not less real because it is limited to enforcing the requirement that evidence appear substantial when viewed, on the record as a whole, * * *." Universal Camera Corp. v. N. L. R. B., 1951, 340 U.S. 474, 490, 71 S.Ct. 456, 466. Or, as the Court of Appeals for the Seventh Circuit said, speaking of censorship in general:

"* * * Judges, no less than legislators should observe, without prejudice, what is going on in our changing society, averting through such alertness treating law as a petrified body of shibboleths. In the past 'obscene' was hedged about with all the unreasoning of verbal taboos and the community imagined that word was 'invariant under transformation.' Coming to terms with change, running throughout the Supreme Court decisions in the previous restraint field during the past years, reveals the penumbra of uncertainty radiating from the use of word 'obscene.' * * * Only by a close study of the facts as they con-

front judges when a record is made in these cases, can it be determined whether a censor has frustrated an owner, publisher, or exhibitor by an inaccurate classification. After all, censors come to their work with preconceived notions and only an objective comparison of their judgments with the facts allows for legalistic evaluation." Capitol Enterprises, Inc. v. City of Chicago, 7 Cir., 1958, 260 F.2d 670, 674–675.

▮▮▮ The primary evidence in this type of proceeding is, of course, the articles themselves. Ascertaining whether the treatment of a given subject is obscene demands a taxing analysis of both content and context since it is not merely the use of language or description unacceptable by contemporary community standards which is forbidden but the material must also be held capable of evoking a prurient interest.

Further, that interest must provide the dominant theme of the work which may very well necessitate a dissection of the literary product to determine whether, even though there be an overwhelming galaxy of four-letter Anglo Saxon words or other expressions usually consigned to the category of obscene parlance, nevertheless, the appeal is to some other interest than the prurient.

It is presumably for that reason that the courts have given recognition to the literary setting in which the attacked expression is found, with references made to the intent of the author, the literary merit of the work, and the craft requirements of the styled employed.[8] But, caution must be exercised to avoid relying solely on abstract or academic literary judgments. The legal standard of obscenity is not intended to serve as a protection for *semantic* liberalism under the guise of free speech.[9] It is concerned

8. See, for example, the reviews of Lady Chatterley's Lover and Ulysses. Grove Press, Inc. v. Christenberry, 2 Cir., 1960, 276 F.2d 433; United States v. One Book Entitled Ulysses, 2 Cir., 1934, 72 F.2d 705.

9. This important distinction between the idea and the means by which it is ex-

pressed was emphasized in Roth v. United States, 1957, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 and acted upon in Kingsley Pictures Corp. v. Regents, 1959, 360 U.S. 684, 79 S.Ct. 1362, 3 L.Ed.2d 1512. Freedom to present any idea is that encompassed by the First Amendment, not the license to use any language.

with the social effect of the language and, hence, the requirement that dominant theme be the appeal to the prurient as reflected in the judgment of the average man, applying contemporary community standards.

It is by the inclusion of the contemporary criterion that the law of obscenity becomes a vital, living concept of social freedom, or "ordered liberty." As has been discussed before,[10] evidence of the community climate may or may not be admissible, depending on the construction given the Roth test. Its absence on the administrative record is not yet decisive of this court's power to review and render a summary judgment.

Rather, it must be held, in the absence of a showing to the contrary, that the official to whom the function of trier of fact has been assigned by virtue of the administrative process applied the contemporary standards which he respects as an average member of the community. And the court is competent, likewise, to determine whether his conclusion could reasonably be drawn from the facts because the court can stand in the same position, of an average man, applying the proper standards, much as it is required to do whenever exercising its conventional judicial function of deciding whether reasonable men could differ.

Turning to the record now presented for review, it must be ruled that "Big Table I" could not be found obscene, as a matter of law. The two articles said to dominate the publication are works of prose. The one, entitled "Old Angel Midnight" by Jack Kerouac, is a bit of construction in the vein of a "stream of consciousness" technique and appears to be some sort of dialogue between, broadly, God and Man. The contextual scheme is a critique of the world. It is indeed numerically replete with words which are not used, overtly at least, by the average person. But, in the court's opinion, any libidinous effect those words might commonly have could not possibly occur from their present position among other printed characters which sometimes rise to the dignity of a word and sometimes do not.

Obscene material, as stated above, is "material which deals with sex in a manner appealing to prurient interest." The Kerouac article does not deal with sex any more than it deals with anything else. And, surely, the meaning of "manner" in that approved definition implies a method of presentation which is something more than simply using unaccepted words.[11]

In comparison, the other accused article, "Ten Episodes from Naked Lunch" by William S. Burroughs, which is devoted to the days in the life of a narcotics addict, may be termed representational in that there is a purposeful progression of situations, some of which cover topics of sex. But, it must be reiterated, it is the manner of dealing with sex which is to be judged. "Naked Lunch," while not exactly a wild prose picnic in the style of Kerouac, is, taken as a whole, similarly unappealing to the prurient interest. The exacerbated, morbid and perverted sex related by the author could not arouse a corresponding interest in the average reader, as the Hearing Examiner in this case agreed.[12] The dominant theme or effect is that of shocking the contemporary society, in order perhaps to better point out its flaws and weaknesses, but that clinical appeal is not akin to lustful thoughts.

As the foregoing analysis reveals, describing the facts in cases such as this is not an easy task and necessarily requires some characterizations, but that

---

10. See text of opinion supra citing Smith v. California, 1959, 361 U.S. 147, 80 S. Ct. 215, 4 L.Ed.2d 205, and footnote 2.

11. It is the opinion of Chief Justice Warren that it is only the manner in which the accused material is used that should determine "obscenity," i.e., the conduct of the individual who purveys it. Kingsley Books, Inc. v. Brown, 1957, 354 U.S. 436, 445, 77 S.Ct. 1325, 1 L.Ed.2d 1469; Roth v. United States, supra.

12. See footnote 7 supra.

cannot be escaped so long as judicial review is accorded in obscenity matters.[13]

The other evidence contained in the record consists of testimony and exhibits pertaining to literary merit and the serious purpose of the authors. As summarized in the agency decision, a consensus of the views of the witnesses, numbered among whom were respected critics, professors, and authors, is that the material is within the broad field of serious literature and that the writers are intent on literary pursuits. The merit of their works is in dispute and not highly regarded for the most part. But, as was said in the "Ulysses" opinion:

> " * * * Art certainly cannot advance under compulsion to traditional forms, and nothing in such a field is more stifling to progress than limitation of the right to experiment with a new technique." United States v. One Book Entitled Ulysses, 2 Cir., 1934, 72 F.2d 705, 708.

Although having reached the conclusion that the record does not support a finding of obscenity, the task of reviewing "Big Table I" is not yet done. The Post Office also charged that the contents of the magazine were "filthy," a separate classification of non-mailable matter. United States v. Limehouse, 1932, 285 U.S. 424, 52 S.Ct. 412, 76 L.Ed. 843. The test in that regard is whether the material has "a tendency to deprave or corrupt the morals of those who would receive them." Verner v. United States, 9 Cir., 1950, 183 F.2d 184, 185.

That standard, if considered substantially the same as the later Roth test or as requiring somewhat more of a positive reaction,[14] also could not be met by the evidence in the instant case, as is apparent from the description given above.

13. See the concurring opinion of Justice Black in Smith v. California, 1959, 361 U.S. 147, 80 S.Ct. 215, in which he holds that the current rule makes the Supreme Court (and, ipso facto, the lower courts) a Supreme Board of Censors.

14. Presumably, it could not be of a lesser degree than the Roth test and still be

The motion of the plaintiff for summary judgment is allowed and the order of the Post Office Department declaring "Big Table I" non-mailable will be vacated and set aside.

constitutional, for it is obscenity which is not protected by the First Amendment. And see the statement of Justice Brennan, the author of the Roth decision, in which he says that the standard there set out withstands the charge of constitutional infirmity. Roth v. United States, 1957, 354 U.S. 476, 489, 77 S.Ct. 1304.