## UNITED STATES v. DENNETT.

### No. 238.

Circuit Court of Appeals, Second Circuit.

March 3, 1930.

Greenbaum, Wolff & Ernst, of New York City (Morris L. Ernst, Newman Levy, and Alexander Lindey, all of New York City, of counsel), for appellant.

Howard W. Ameli, U. S. Atty., of Brooklyn, N. Y. (Herbert H. Kellogg, James E. Wilkinson, and Emanuel Bublick, Asst. U. S. Attys., all of Brooklyn, N. Y., of counsel), for the United States.

Before SWAN, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge (after stating the facts as above).

■■ It is doubtless true that the personal motive of the defendant in distributing her pamphlet could have no bearing on the question whether she violated the law. Her own belief that a really obscene pamphlet would pay the price for its obscenity by means of intrinsic merits would leave her as much as ever under the ban of the statute. Regina v. Hicklin, L. R. 3 Q. B. 360; United States v. Bennett, Fed. Case No. 14,571; Rosen v. United States, 161 U. S. at page 41, 16 S. Ct. 434, 480, 40 L. Ed. 606.

■ It was perhaps proper to exclude the evidence offered by the defendant as to the persons to whom the pamphlet was sold, for the reason that such evidence, if relevant at all, was part of the government's proof. In other words, a publication might be distributed among doctors or nurses or adults in cases where the distribution among small children could not be justified. The fact that the latter might obtain it accidently or surreptitiously, as they might see some medical books which would not be desirable for them to read, would hardly be sufficient to bar a publication otherwise proper. Here the pamphlet appears to have been mailed to a married woman. The tract may fairly be said to be calculated to aid parents in the instruction of their children in sex matters. As the record stands, it is a reasonable inference that the pamphlet was to be given to children at the discretion of adults and to be distributed through agencies that had the real welfare of the adolescent in view. There is no reason to suppose that it was to be broadcast among children who would have no capacity to understand its general significance. Even the court in Regina v. Hicklin, L. R. 3 Q. B. at p. 367, which laid down a more strict rule than the New York Court of Appeals was inclined to adopt in People v. Eastman, 188 N. Y. 478, 81 N. E. 459, 11 Ann. Cas. 302, said that "the circumstances of the publication" may determine whether the statute has been violated.

■ But the important consideration in this case is not the correctness of the rulings of the trial judge as to the admissibility of evidence, but the meaning and scope of those words of the statute which prohibit the mailing of an *"obscene, lewd or lascivious * * * pamphlet."* It was for the trial court to determine whether the pamphlet could reasonably be thought to be of such a character before submitting any question of the violation of the statute to the jury. Knowles v. United States (C. C. A.) 170 F. 409; Magon v. United States (C. C. A.) 248 F. 201. And the test most frequently laid down seems to have been whether it would tend to deprave the morals of those into whose hands the publication might fall by suggesting lewd thoughts and exciting sensual desires. Dunlop v. United States, 165 U. S. at page 501, 17 S. Ct. 375, 41 L. Ed. 799; Rosen v. United States, 161 U. S. 29, 16 S. Ct. 434, 480, 40 L. Ed. 606.

It may be assumed that any article dealing with the sex side of life and explaining the functions of the sex organs is capable in some circumstances of arousing lust. The sex impulses are present in every one, and without doubt cause much of the weal and woe of human kind. But it can hardly be said that, because of the risk of arousing sex impulses, there should be no instruction of the young in sex matters, and that the risk of imparting instruction outweighs the disadvantages of leaving them to grope about in mystery and morbid curiosity and of requiring them to secure such information, as they may be able to obtain, from ill-informed and often foul-minded companions, rather than from intelligent and high-minded sources. It may be argued that suggestion plays a large part in such matters, and that on the whole the less sex questions are dwelt upon the better. But it by no means follows that such a desideratum is attained by leaving adolescents in a state of inevitable curiosity, satisfied only by the casual gossip of ignorant playmates.

The old theory that information about sex matters should be left to chance has greatly changed, and, while there is still a difference of opinion as to just the kind of instruction which ought to be given, it is commonly thought in these days that much was lacking in the old mystery and reticence. This is evident from the current literature on the subject, particularly such pamphlets as "Sex Education," issued by the Treasury Department United States Public Health Service in 1927.

■ The statute we have to construe was never thought to bar from the mails everything which *might* stimulate sex impulses. If so, much chaste poetry and fiction, as well as many useful medical works would be under the ban. Like everything else, this law must

be construed reasonably with a view to the general objects aimed at. While there can be no doubt about its constitutionality, it must not be assumed to have been designed to interfere with serious instruction regarding sex matters unless the terms in which the information is conveyed are clearly indecent.

We have been referred to no decision where a truthful exposition of the sex side of life, evidently calculated for instruction and for the explanation of relevant facts, has been held to be obscene. In Dysart v. United States, 272 U. S. 655, 47 S. Ct. 234, 71 L. Ed. 461, it was decided that the advertisement of a lying-in retreat to enable unmarried women to conceal their missteps, even though written in a coarse and vulgar style, did not fall within prohibition of the statute, and was not "obscene" within the meaning of the law.

The defendant's discussion of the phenomena of sex is written with sincerity of feeling and with an idealization of the marriage relation and sex emotions. We think it tends to rationalize and dignify such emotions rather than to arouse lust. While it may be thought by some that portions of the tract go into unnecessary details that would better have been omitted, it may be fairly answered that the curiosity of many adolescents would not be satisfied without full explanation, and that no more than that is really given. It also may reasonably be thought that accurate information, rather than mystery and curiosity, is better in the long run and is less likely to occasion lascivious thoughts than ignorance and anxiety. Perhaps instruction other than that which the defendant suggests would be better. That is a matter as to which there is bound to be a wide difference of opinion, but, irrespective of this, we hold that an accurate exposition of the relevant facts of the sex side of life in decent language and in manifestly serious and disinterested spirit cannot ordinarily be regarded as obscene. Any incidental tendency to arouse sex impulses which such a pamphlet may perhaps have is apart from and subordinate to its main effect. The tendency can only exist in so far as it is inherent in any sex instruction, and it would seem to be outweighed by the elimination of ignorance, curiosity, and morbid fear. The direct aim and the net result is to promote understanding and self-control.

No case was made for submission to the jury, and the judgment must therefore be reversed.