WALKER, Postmaster General of the United States, v. POPENOE et al.

No. 8875.

United States Court of Appeals District of Columbia.

Argued March 21, 1945.

Decided May 28, 1945.

Mr. Frederick Chait, of Washington, D. C., Attorney, Department of Justice, pro hac vice, by special leave of Court, with whom Assistant Attorney General Francis M. Shea and Messrs. Edward M. Curran, United States Attorney, of Washington, D.C., and Arnold Levy, Special Assistant to the Attorney General, were on the brief, for appellant. Mr. Daniel B. Maher, Assistant United States Attorney, of Washington, D. C., also entered an appearance for appellant.

Mrs. Virginia Collins Duncombe, of Washington, D. C. with whom Mr. Charles A. Horsky, of Washington, D. C., was on the brief, for appellees.

Before GRONER, Chief Justice, and EDGERTON and ARNOLD, Associate Justices.

EDGERTON, Associate Justice.

Appellees are the author and the publisher of a pamphlet called Preparing for Marriage, which appellant, the Postmaster General, has excluded from the mails. The District Court granted appellees a summary judgment enjoining appellant from refusing to carry the pamphlet.

The pamphlet contains detailed information and advice regarding the physical and emotional aspects of marriage. Appellees

have devoted serious study to the subject. The language of their pamphlet is plain but decent. Its obvious purpose is to educate, and so to benefit, persons who are about to marry. Its premises are that marriage should be made as happy, and as permanent, as possible; that too many marriages are unhappy and too many end in divorce; that some sorts of sexual behavior are more conducive than others to happiness and permanence in marriage; that there is a body of knowledge on this subject which is not instinctive and should be made available to those who need it; and that pamphlets can aid in the diffusion of this knowledge.

Appellant relies on a statute which directs him to exclude from the mails publications which are "obscene, lewd, or lascivious."[1] This statute was enacted 72 years ago, during the presidency of General Grant. It assumes that the stimulation of the senses by writing or print is an evil. It does not assume that this is the worst of evils and must be prevented wherever possible at all costs.

Despite the purely educational purpose and the uniformly decent language of appellees' pamphlet it may be that some of its phrases, by reason merely of their subject matter, may stimulate the senses of some persons. But much more than this is necessary to bring a work within the statute; otherwise no work on anatomy, and no dictionary, could be sent through the mails, and much of our most respected literature would be barred. (1) The effect of a publication on the ordinary reader is what counts.[2] The statute does not intend that we shall "reduce our treatment of sex to the standard of a child's library in the supposed interest of a salacious few."[3] (2) The statute does not bar from the mails an obscene phrase or an obscene sentence. It bars an obscene "book, pamphlet * * * or other publication * * *." If a publi-

cation as a whole is not stimulating to the senses of the ordinary reader, it is not within the statute.[4] (3) It would make nonsense of the statute to hold that it covers works of value and repute merely because their incidental effects may include some slight stimulation· of the senses of the ordinary reader. The *dominant* effect of an entire publication determines its character. "The standard must be the likelihood that the work will so much arouse the salacity of the reader to whom it is sent·as to outweigh any literary, scientific or other merits it may have in that reader's hands."[5]

For all three of the foregoing reasons, "works of physiology, medicine, science, and sex instruction are not within the statute * * * ."[6] No serious work of this character, expressed in decent language, is obscene, lewd, or lascivious.[7] The point is emphasized by the fact that the same statute expressly bars from the mails works "giving information, directly or indirectly * * * how or by what means conception may be prevented or abortion produced." If explicit sex information had been obscene, lewd, or lascivious within the meaning of the statute, particular mention of contraceptive information would not have been necessary.

The statement in appellant's brief that appellees' pamphlet "deals with contraception and gives information as to sources of additional material on the subject" is quite misleading. The pamphlet mentions contraception, but it does not describe or even remotely suggest any contraceptive method. It contains ·what it calls a "supplementary reading list" of sixteen items. One of these is "Himes, Norman E. Practical Birth Control Methods. N.Y., 1938." The pamphlet gives no further information about this item and does not tell where or how the reader can get it. If, as appellant seems to contend, the listing of it justified exclusion of

[1] Act of March 3, 1873, 17 Stat. 599, Rev.Stat.1873, § 3893, 35 Stat. 1129, March 4, 1909, 36 Stat. 1339, March 4, 1911, 18 U.S.C.A. § 334, Criminal Code, § 211, as amended.

[2] Parmelee v. United States, 72 App. D.C. 203, 113 F.2d 729; United States v. One Book Called "Ulysses," D.C., S.D.N.Y., 5 F.Supp. 182, affirmed, 2 Cir., 72 F.2d 705, 708.

[3] United States v. Kennerley, D.C., S.D.N.Y., 209 F. 119, 121.

[4] United States v. One Book Entitled Ulysses, 2 Cir., 72 F.2d 705; Parmelee

v. United States, 72 App.D.C. 203, 211, 113 F.2d 729.

[5] United States v. Levine, 2 Cir., 83 F. 2d 156, 158.

[6] United States v. One Book Entitled Ulysses, 2 Cir., 72 F.2d 705, 707.

[7] Parmelee v. United States, 72 App. D.C. 203, 210, 113 F.2d 729; Consumers Union of United States, Inc. v. Walker, 79 U.S.App.D.C. 229, 145 F.2d 33; United States v. Dennett, 2 Cir., 39 F. 2d 564, 76 A.L.R. 1092; United States v. One Obscene Book Entitled "Married Love," D.C., S.D.N.Y., 48 F.2d 821.

appellees' pamphlet from the mails, the Index Expurgatorius would have to be excluded from the mails if it should list a similar item. The statute does not go so far. A general statement that works on birth control exist does not give information "how or by what means conception may be prevented," and neither does a statement that a particular work on birth control exists. Information is not even "indirectly" given unless it is at least made easier to get. One need not know the name of a book or an author in order to go to a store or library and ask for a book on birth control. One's probable chance of getting a book, which may be great or small according to circumstances, is not material here. Whether it is great or small, it will not be materially increased if one asks for a particular book; and this is all that appellees' pamphlet enables one to do.

■ Appellant's order barring the pamphlet from the mails was issued without notice or hearing. The trial court held, and we agree, that the order was for that reason a denial of due process. Our views on this point are expressed in Judge Arnold's opinion in which, as in the present opinion, we all concur. But if the judgment were affirmed solely on this ground, the merits would have to be decided in a future hearing and a future law-suit. To obviate that necessity we are deciding the merits now. The pamphlet is not covered by the statute. Since a contrary finding could not be supported,[8] it is immaterial that the trial court made no finding. The result is that the judgment is affirmed on each of two distinct and independent grounds. If both these grounds were absent, we should have to consider whether Congress may constitutionally confine discussion of sex as it could not confine discussion of other subjects within the limits which it conceives to be good for the community.

ARNOLD, Associate Justice (concurring).

■ The statute under which the Postmaster General acted in this case makes the mailing of obscene matter a serious crime. It also provides that obscene material shall not be conveyed in the mails. The Postmaster General construed this statute as giving him power to exclude from the mails, without a hearing, any publication which in his judgment was obscene. The court below correctly decided that the order barring appellees' pamphlet from the mails without a hearing was a violation of due process.

The power to exclude a publication from the mails without a hearing in practical effect permits the Postmaster General to cause irreparable injury to any publisher without the minimum safeguard of an opportunity to present his case. There are, of course, other means of distribution besides the mails, but they are not effective ones in the case of ordinary publications. To deprive a publisher of the use of the mails is like preventing a seller of goods from using the principal highway which connects him with his market. In making the determination whether any publication is obscene the Postmaster General necessarily passes on a question involving the fundamental liberty of a citizen. This is a judicial and not an executive function. It must be exercised according to the ideas of due process implicit in the Fifth Amendment. As we said in the case of Pike v. Walker:[1]

"Whatever may have been the voluntary nature of the postal system in the period of its establishment, it is now the main artery through which the business, social, and personal affairs of the people are conducted and upon which depends in a greater degree than upon any other activity of government the promotion of the general welfare. Not only this, but the postal system is a monopoly which the government enforces through penal statutes forbidding the carrying of letters by other means. It would be going a long way, therefore, to say that in the management of the Post Office the people have no definite rights reserved by the First and Fifth Amendments of the Constitution, and if they have, it would follow that in administering the laws established to protect the mail and the regulations thereunder the duty of the Postmaster General would be,—to use the language of Justice Brandeis in the Burleson case, supra, [255 U.S. 407, 41 S.Ct. 352, 65 L.Ed. 704]—that:

" 'In making the determination he must, like a court or a jury, form a judgment

8 Cf. Parmelee v. United States, 72 App.D.C. 203, 113 F.2d 729; American School of Magnetic Healing v. McAnnulty, 187 U.S. 94, 109, 23 S.Ct. 33, 47 L.Ed. 90.

1 1941, 73 App.D.C. 289, 291, 121 F. 2d 37, 39.

whether certain conditions prescribed by Congress exist, on controverted facts or by applying the law. The function is a strictly judicial one, although exercised in administering an executive office. And it is not a function which either involves or permits the exercise of discretionary power'—which is to say, that his authority is governed by the Acts of Congress which confer it, and by the law of the land."

The statement of Mr. Justice Brandeis quoted above occurs in a dissent. But on this particular point his conclusion is reinforced by the majority opinion [2] which upheld the order of the Postmaster General on the ground, among others, that a hearing had been accorded in that case which satisfied the requirements of due process.

The Burleson case dealt with matter which was unmailable because of the Espionage Act. But there is no reason of public policy which would require a different rule in case of obscenity. There are no absolute and enduring standards of what is obscene. The border line between obscenity and decency changes with the times, with public taste in literature and with public attitudes on sex instruction. The determination of whether a publication violates such changing standards is certainly one which should not be undertaken without a hearing.

We are not impressed with the argument that a rule requiring a hearing before mailing privileges are suspended would permit, while the hearing was going on, the distribution of publications intentionally obscene in plain defiance of every reasonable standard. In such a case the effective remedy is the immediate arrest of the offender for the crime penalized by this statute. Such action would prevent any form of distribution of the obscene material by mail or otherwise. If the offender were released on bail the conditions of that bail should be a sufficient protection against repetition of the offense before trial. But often mailing privileges are revoked in cases where the prosecuting officers are not sure enough to risk criminal prosecution. That was the situation here. Appellees have been prevented for a long period of time from mailing a publication which we now find contains nothing offensive to current standards of public decency. A full hearing is the minimum protection required by due process to prevent that kind of injury.

Affirmed.

---

[2] United States ex rel. Milwaukee Social Democratic Pub. Co. v. Burleson, 1921, 255 U.S. 407, 41 S.Ct. 352, 65 L. Ed. 704.