## UNITED STATES v. GOLDSTEIN.
### No. 4149c.

District Court, D. New Jersey.

Oct. 21, 1947.

---

Edgar H. Rossbach, U. S. Atty., of Newark, N. J., and Joseph B. Schwartz, Asst. U. S. Atty., of Perth Amboy, N. J., for the Government.

Charles A. Stanziale and Samuel E. Cooper, both of Newark, N. J., for defendant.

MEANEY, District Judge.

Defendant, William Goldstein, was indicted on two counts for violations of Title 18, U.S.C.A. § 334. The indictment charges the defendant with mailing and causing to be mailed certain nonmailable matter consisting of a pamphlet entitled "The Ideal Intercourse," which it is alleged is an obscene, lewd, lascivious and filthy writing.

The matter is presently before the court on the defendant's motion to quash the indictment on the ground that the matters contained therein do not constitute an offense within the meaning and scope of the words of the statute which prohibit the mailing of "every obscene, lewd or lascivious * * * pamphlet."

In support of his motion defendant contends that nowhere in the pamphlet are there any words commonly referred to as vulgar. Defendant strenuously urges that the sole function of the booklet is the sex education of married persons and that the mere fact that the pamphlet delves into matters of sexual relations between husband and wife should in no wise make the writing obscene within the prohibitions of the statute in question.

By the motion now before it, the court must determine as a question preliminary to the trial of the issues before a jury, whether the pamphlet in question could reasonably be thought to be of such character as would bring it within the inhibitions of the statute above cited. If the writing is fairly open to reasonable

doubt, or is not patently without the scope of the statute, or is doubtfully so, the motion to quash should be denied and the matter should be submitted to a jury for determination. United States v. Dennett, 2 Cir., 39 F.2d 564, 76 A.L.R. 1092; Knowles v. United States, 8 Cir., 170 F. 409.

The test of what is obscene is not easy of definition, as is indicated in the contrasting opinions of Judges Augustus N. Hand and Martin T. Manton in the case of United States v. One Book Entitled Ulysses, 2 Cir., 72 F.2d 705, this Court finding a more satisfactory application of the law in the reasoned determination of Judge Hand.

■ The test generally laid down is whether the writing is of such a character as would tend to deprave the morals of those into whose hands the publication might fall, by suggesting lewd thoughts and exciting sensual desires. United States v. Dennett, supra; Dunlop v. United States, 165 U.S. 486, 501, 17 S.Ct. 375, 41 L.Ed. 799. In Dysart v. United States, 272 U.S. 655, 47 S.Ct. 234, 71 L.Ed. 461, the Supreme Court indicated as one test that the language must be such as would be calculated to corrupt and debauch the mind and morals of those into whose hands it might fall.

However, to say that everything is obscene which "tends to deprave and corrupt the morals of those whose minds are open to such influences, and into whose hands a publication of this sort may fall," might lead to appalling absurdities unless some further elements entered into consideration of the matter involved. There are those to whom perusal of statutes outlining sexual crimes, or news items referring to the ravishment of females, or sermons denouncing violation of the Commandment, "Thou shalt not commit adultery," might incite to lewd and lustful thoughts and their consequences. There are undeveloped minds which might be driven to prurient speculation by reading any number of books which have received the sanction of the Supreme Court, and a list of which would include some of the most vitalizingly stimulating masterpieces of the world's literature. The question is to be determined by no easy dismissal in all comprehensive terms of denunciation. Is that which is erotic to the neurotic to be forbidden to the sound and sane mind? Are we to substitute the mental pabulum of the adolescent for the properly nourishing fare of the adult? If we are to be concerned with infantile mentality and its preservation unpolluted, grimly logical extension of such an attitude might beget the suggestion that no one should be taught to read until adolescence is safely past and then only if immunity to improper suggestion is indicated. Parenthetically, to carry the thought further, it might be well to suggest that "depraving and corrupting morals" etymologically speaking, cannot be confined to sexual morality alone, widespread though the confusion may be concerning the definition of morality. Some zealots seem to think that only is immoral which is unchaste, forgetting that murder, stealing, slander, backbiting and cruelty are immoral too.

Some more elastic standard must be established than the narrow, prejudicial and prejudiced delimitations which would concern themselves with protection of immature minds and guardianship of a salacious few. Some protection must be given the youth other than that which restricts grown-up mentalities. Would it be brash to suggest some measure of parental supervision and greater stress of school and church influence? The salacious few will stew in their own juice, regardless of all efforts to save them.

■ Thus it is apparent that the mere fact that a writing is concerned with matters pertaining to the sexes and with sexual relations, and more particularly with education in such matters, is certainly not sufficient to bring the writing within the purview of the statute. The writing must additionally appeal to prurience and be such as would tend to excite and incite voluptuous thoughts and desires beyond those which might be stimulated in any ordinary discourse on matters of sex education.

■ The pamphlet here involved is asserted to be purely educational. In the opinion of the court it goes considerably beyond the bounds of decency in serving its asserted purpose. While the statute does

not intend that we shall reduce our treatment of sex in writing or literature to the standard of a child's library, Walker v. Popenoe, 80 U.S.App.D.C. 129, 149 F.2d 511, it certainly does not intend that, under the guise of publishing an educational treatise, the purveyor of obscene and licentious accounts of ordinary sexual relations is to find exculpation. The unwillingness of courts to be unduly censorious is not to be used as a go-sign for snide trafficking in salacity.

It is within this latter category that, in the court's opinion, the pamphlet in question falls.

While the defendant insists that the writing has for its sole purpose the education of married persons in their sexual relations, the general tone of the writing, read as a whole, lends small credence to this asserted purpose. The language employed, while not involving the use of vulgar words or phrases in their accepted sense, is nevertheless filled with a lush, phony heartiness, and a vividness of unnecessary detail which far exceed the requirements of educational writing and sound practical judgment, and assume a libidinous aspect.

In the view of the court the pamphlet would pander to moral depravity and the glorification of sensual desire beyond the bounds of necessity inherent in any sex instruction.

It may be noted additionally that, although the intent with which the pamphlet is written and the circumstances of its distribution are not controlling, they lend persuasive weight to a determination of the tenor of the writing which tenor manifests itself further in the sly mock concern expressed for the readers' improved understanding.

All of the foregoing does not establish a hard and fast rule, or an absolute criterion. But the principles set forth in the cited authoritative decisions, applied with reasonable consideration for complex human relations and conditions of life such as those to which this court has referred, may very well serve as a sufficient restriction against license, rather than as an unduly handicapping moral straightjacket.

In view of the above, it may not be said that the character of the writing could not reasonably be found to fall within the inhibitions of the statute.

Defendant's motion, accordingly, is denied.