No. 39,699

HOLMBY PRODUCTIONS, INCORPORATED, and UNITED ARTISTS CORPORATION, *Appellees,* v. MRS. FRANCES VAUGHN, MRS. J. R. STOWERS and MRS. BERTHA HALL, constituting The Kansas State Board of Review; HAROLD R. FATZER, Attorney General of the State of Kansas; and DONALD E. MARTIN, County Attorney of Wyandotte County, Kansas, *Appellants.*

(282 P. 2d 412)

Opinion filed April 9, 1955.

*Arthur J. Stanley, Jr.,* and *Robert H. Bingham,* both of Kansas City, argued the cause, and *Arthur J. Stanley, J. E. Schroeder, L. E. Weeks,* and *Leonard O. Thomas,* all of Kansas City, were with them on the briefs for the appellants.

*James C. Wilson,* of Kansas City, Mo., argued the cause, and *Lee Vaughan,* and *Donald A. Hardy,* both of Kansas City, and *George T. Morton, Jr.,* of Kansas City, Mo., were with him on the briefs for the appellees.

The opinion of the court was delivered by

ROBB, J.: This is an appeal from the trial court's order granting a permanent injunction in favor of appellees and enjoining appellants from interference with or penalization of appellees as a result of exhibition of the motion picture, "The Moon is Blue."

The appellants are the Kansas State Board of Review, the attorney general, and the county attorney of Wyandotte county. The appellees are Holmby Productions, Incorporated, owner of the film, "The Moon is Blue," and United Artists Corporation, sublicensee, as the sole and exclusive distributor of the film throughout the world.

Pursuant to G. S. 1949, 51-102 the film was submitted to the Kansas State Board of Review, a creature of the statutes (G. S. 1949, 74-2201). On June 17, 1953, the board disapproved the film for the reasons,

"Sex theme throughout, too frank bedroom dialogue: many sexy words; both dialogue and action have sex as their theme."

The board, after this injunction action was filed, re-examined the film and on September 11, 1953, under authority granted by statute (G. S. 1949, 51-109) again disapproved the film for the reasons,

". . . the Board has found that film to be obscene, indecent and immoral, and such as tend to debase or corrupt morals,"

following in the language of the statute (G. S. 1949, 51-103), which further reads:

"The Board shall examine films, reels, [and] . . . spoken dialogue . . . and shall approve such films, reels, [and] . . . spoken dialogue

. . . . which are moral and proper; and shall disapprove such as are cruel, obscene, indecent or immoral, or such as tend to debase or corrupt morals. . . . ."

The injunction action was filed on August 17, 1953, in the district court of Wyandotte county, pursuant to G. S. 1949, 51-107. All parties to the action filed their respective pleadings, which set up the issues. The case was tried on June 22, 1954. The trial court heard the evidence, viewed the film at the close of the trial, and made findings of fact which, omitting formal matters, were substantially as follows:

Prior to June 17, 1953, there had been a submission and disapproval of the film; there had been some correspondence between the board and the attorney general's office; there had been a reexamination of the film and a final disapproval. The court further found that appellees could secure considerable revenue by exhibiting the film in Kansas.

The trial court made conclusions of law as follows:

The board's action must be upheld unless it was fraudulent or so arbitrary and capricious as to be, in effect, fraudulent; statutory review of the board's action was not required unless the statute is valid in its present application; motion pictures are protected by the first and fourteenth amendments to the constitution of the United States; the statute providing for censorship is invalid, as repugnant thereto; the board's statements and reasons for its construction of the words of the statute gave each of the words a meaning so broad and vague as to render the statute unconstitutional; and finally, that appellees were entitled to, and the trial court granted, a permanent injunction.

The journal entry in accordance with the findings and conclusions was signed on September 8, 1954.

A motion for a new trial was filed and overruled, a proper notice of appeal was timely filed, and the matter is now here on the following specifications of error:

"1. The Trial Court erred in overruling, at the close of the plaintiffs' evidence, the defendants' demurrer thereto.

"2. The Trial Court erred in overruling the motion of the defendants for a new trial.

"3. The Trial Court erred in interpreting Kan. G. S. 1949, 51-103, as being unconstitutional in that it is violative of the provisions of the 1st and 14th Amendments to the Constitution of the U. S. and Sections 11 and 18 of the Bill of Rights of the Kansas Constitution.

"4. The Trial Court's Conclusions of Law are not supported by its Findings of Fact.

"5. The Trial Court's Findings of Fact are not supported by the evidence."

Our legislature has seen fit, by the statutes quoted, to set up an administrative body, the Kansas State Board of Review, to examine motion picture reels and either approve or disapprove them on the bases prescribed in other statutes. (G. S. 1949, 51-103 to 51-109.) Redress to the district court of Wyandotte county is also provided for if anyone is aggrieved by an action of the board. The only redress a court can give is one of a judicial nature or power. It is not one of a legislative or administrative nature. A court cannot substitute its opinion in place of the board's opinion as to the fitness of a film because our courts do not have such power conferred upon them by the legislature. If this situation is to be changed, it is the duty of the legislature to make the change. It cannot come as a result of a court usurping such power. Neither the district court of Wyandotte county nor this court has the power to substitute its judgment for the administrative discretion of the board. We are fully aware of the necessity of judicial interference where there is an abuse of administrative discretion. To have it any other way would be to destroy the vital marrow of our great concept of government, which is based on three distinct branches—the judicial, the legislative, and the executive. (*Photo Play Corporation v. Board of Review,* 102 Kan. 356, 169 Pac. 1154.) No abuse of administrative discretion by the board is here shown.

The only question before us, then, is whether the statutes under consideration are unconstitutional because they are an abridgment or contravention of the first and fourteenth amendments to the constitution of the United States, or because they are couched in language so vague and indefinite as to offend due process.

We will first determine whether the words, "obscene, indecent, or immoral, or such as tend to debase or corrupt morals," are vague and indefinite terms so as to offend due process. We are of the opinion these words have an accepted, definite, and clear meaning.

Under G. S. 1949, 77-201, *Second,* we find the following:

"Words and phrases shall be construed according to the context and the approved usage of the language; but technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in law, shall be construed according to such peculiar and appropriate meaning."

In applying this standard to the word "obscene," we find the following definition in Black's Law Dictionary, 4th ed.,

"Offensive to chastity of mind or to modesty, expressing or presenting to the mind or view something that delicacy, purity, and decency forbids to be exposed; offensive to modesty, decency, or chastity; impure, unchaste, indecent, lewd; offensive to senses; repulsive; disgusting; foul; filthy; calculated to corrupt, deprave, and debauch the morals of the people, and promote violation of law; of such character as to deprave and corrupt those whose minds are open to such immoral influences; calculated to lower that standard which we regard as essential to civilization or calculated, with the ordinary person, to deprave his morals or lead to impure purposes; licentious and libidinous and tending to excite feelings of an impure or unchaste character; having relation to sexual impurity; tending to stir the sex impulses or to lead to sexually impure and lustful thoughts; tending to corrupt the morals of youth or to lower the standards of right and wrong especially as to the sexual relation. Parmelee v. United States, 72 App. D. C. 203, 113 F. 2d 729, 730." (p. 1227.)

In 33 Am. Jur., § 4, p. 17, we find the following:

"Obscenity was indictable at common law, on the ground that what tended to corrupt society amounted to a breach of the peace, and various acts and forms of obscenity are made criminal offenses by statute or ordinance. The word obscenity cannot be said to be a technical term of the law and is not susceptible of exact definition in its judicial uses, although it has been defined in a general sense as meaning offensive to morality or chastity, indecent, or nasty."

See, also, 67 C. J. S. 19.

In *United States v. One Book Called "Ulysses,"* 5 F. Supp. 182, 184, we find the following definition:

"The meaning of the word 'obscene' as legally defined by the courts is: Tending to stir the sex impulses or to lead to sexually impure and lustful thoughts. [Citations]

"Whether a particular book would tend to excite such impulses and thoughts must be tested by the court's opinion as to its effect on a person with average sex instincts—what the French would call *l'homme moyensensuel*—who plays, in this branch of legal inquiry, the same role of hypothetical reagent as does the 'reasonable man' in the law of torts and 'the man learned in the art' on questions of invention in patent law." (p. 184.)

The above opinion, which allowed the book in question to be admitted to the United States, was affirmed in *United States v. One Book Entitled Ulysses,* 72 F. 2d 705. (See, also, 29 Words and Phrases, perm. ed., p. 68, *et seq.*)

The supreme court of the United States has made great strides in cases of this type. The most far-reaching has been the case of *Joseph Burstyn, Inc. v. Wilson,* 343 U. S. 495, 96 L. ed. 1098; 72 S. Ct. 777, wherein the same type of proceedings as we have in the case at bar was reviewed. It is well to note, however, that the

supreme court has not gone as far as Mr. Justice Douglas did in his concurring opinion (in which Mr. Justice Black concurred) in *Superior Films v. Dept. of Education,* 346 U. S. 587, 98 L. ed. 329; 74 S. Ct. 286, where it was said:

"In order to sanction a system of censorship I would have to say that 'no law' does not mean what it says, that 'no law' is qualified to mean 'some' laws. I cannot take that step.

"In this Nation every writer, actor, or producer, no matter what medium of expression he may use, should be freed from the censor." (p. 589.)

In the Burstyn case the court held the statute unconstitutional for the reason that it gave a review board authority to disapprove a movie because it was "sacrilegious." The result created by reason of such censorship caused the court to declare the statute in conflict with the first and fourteenth amendments to the federal constitution. That court considers only the constitutionality of the statute. Nowhere has it appeared in any case cited, or in any found by us, that a court has set itself up as a glorified and superior board of review. The Burstyn case, which was written in 1952, referred to the fact that a different attitude has been displayed by the court since the advent of sound pictures, which demonstrates that courts are ever mindful of the march of progress.

The supreme court of the United States in the Burstyn case stated that the constitution does not require absolute freedom to exhibit every motion picture of every kind. This same rule applies to other media of communication so the conclusion reached is that each method or media of expression presents its own peculiar problems. Spoken words with emphasis placed thereon by the speaker may tend to shock the listener while those same words on the printed page may have little or no effect on a reader. Dialogue in a dramatic exhibition when taken into consideration with surrounding circumstances and activity may excite the human senses while the same dialogue on paper with the cleverest descriptive words to show circumstances and activity might create an entirely different reaction. This line of discussion may affect the merits of a film. However, we do affirmatively and specifically state that this court is not acting in the capacity of supervisor of the board of review. We are not passing on the merits of this or any other film. The legislature granted that power to the board of review and not to the courts, either in the first instance or on appeal.

Appellees raise the question that the application of this statute results in previous censorship, or restraint. We will briefly touch

thereupon. We point again to language in the Burstyn case where, quoting from *Near v. Minnesota,* 283 U. S. 697, 75 L. ed. 1357, 51 S. Ct. 625, it was said:

" 'The protection even as to previous restraint is not absolutely unlimited. But the limitation has been recognized only in exceptional cases.' " (p. 503-504.)

In the Near case, *supra,* Mr. Chief Justice Hughes further stated:

". . . the protection even as to previous restraint is not absolutely unlimited. . . . No one would question but that a government might prevent actual obstruction to its recruiting service or the publication of the sailing dates of transports or the number and location of troops. *On similar grounds,* the primary requirements of decency may be enforced against obscene publications." (Our italics.) (p. 716.)

In *Chaplinsky v. New Hampshire,* 315 U. S. 568, 86 L. ed. 1031, 62 S. Ct. 766, Mr. Justice Murphy, stated:

"Allowing the broadest scope to the language and purpose of the Fourteenth Amendment, it is well understood that the right of free speech is not absolute at all times and under all circumstances. There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problem. These include the lewd and obscene, the profane, the libelous, and the insulting or 'fighting' words—those which by their very utterance inflict injury or tend to incite an immediate breach of the peace." (p. 571-572.)

Since the Burstyn case was cited by both appellee and appellant, we feel that reference thereto is appropriate, especially to that part reading as follows:

"Since the term 'sacrilegious' is the sole standard under attack here, it is not necessary for us to decide, for example, whether a state may censor motion pictures under a clearly drawn statute designed and applied to prevent the showing of obscene films. That is a very different question from the one now before us. We hold only that under the First and Fourteenth Amendments a state may not ban a film on the basis of a censor's conclusion that it is 'sacrilegious.' " (p. 505-506.)

In the Burstyn case the court, by the terminology above used, excepted censorship of a film for the reason it was "obscene," which was one of the grounds enumerated by the Kansas board for its disapproval of "The Moon is Blue." In view of what has been said, we are not required to determine how or why our board arrived at its conclusion, or is it necessary here to define other words contained in our censorship statute.

The decree of the trial court is reversed with directions to reinstate the order of the Kansas State Board of Review.