**SUNSHINE BOOK COMPANY and Solair Union Naturisme, Inc., Appellants,**

v.

**Arthur E. SUMMERFIELD, Individually and as Postmaster General of the United States, Appellee.**

No. 12622.

United States Court of Appeals District of Columbia Circuit.

Reargued Sept. 25, 1956.

Decided Oct. 3, 1957.

Mr. O. John Rogge, Washington, D. C., for appellants.

Mr. Donald B. MacGuineas, Atty. Dept. of Justice, with whom Messrs. Samuel D. Slade and Joseph Langbart, Attys., Dept. of Justice, were on the brief, for appellee.

Mr. Edward deGrazia, Washington, D. C., filed a brief on behalf of American Civil Liberties Union, as amicus curiae, urging reversal.

Before EDGERTON, Chief Judge, and PRETTYMAN, WILBUR K. MILLER, BAZELON, FAHY, WASHINGTON, DANAHER and BASTIAN, Circuit Judges, sitting en banc. (Circuit Judge BURGER took no part in the hearing or consideration of this case.)

DANAHER, Circuit Judge, with whom Circuit Judges Prettyman, Wilbur K. Miller and Bastian concur, Circuit Judge Fahy concurring in the result and stating his views separately: Appellants, Sunshine Book Company and Solair Union Naturisme, Inc., sought in the District Court to enjoin the Post Office Department from refusing to transmit by mail the February, 1955, issue of "Sunshine & Health" Magazine and the January-February, 1955, issue of Sun Magazine. A Hearing Examiner in the Post Office Department had decided that the named issues are nonmailable because obscene as that term is used in 18 U.S.C. § 1461 (1952).[1] After review of the appellants' exceptions to the Initial Decision and recommendations of the Hearing Examiner and the Department's reply thereto, the Solicitor of the Post Office Department affirmed. Concluding that the magazines contained photographs of naked men, women and children, are "obscene and indecent when judged by the ordinary community standards of the vast majority of citizens of this country," and noting that advertisements in the magazines indicate that they are offered freely for sale to the general public who are not members of a nudist organization, the Solicitor directed that the postmaster at Mays Landing, New Jersey, be instructed to treat the named issues as nonmailable.

In the District Court, appellants asked a declaration that the determination and order of the Department as applied be declared invalid as unconstitutional; that the Department be restrained permanently from withholding from dispatch in the United States mails the named issues of the magazines, and future numbers of these publications said to be substantially similar to the named issues here involved and to the magazines con-

---

1. Pertinent portions applicable when the proceedings herein were commenced read:

"Every *obscene, lewd, lascivious, or filthy* book, pamphlet, picture, paper, letter, writing, print, or other publication of an indecent character; and—

\* \* \* \* \*

"*Is declared to be nonmailable* matter and *shall not be conveyed in the mails* or delivered from any post office or by any letter carrier." (Emphasis supplied.) Cf. 18 U.S.C. §§ 1461, 1465 (Supp. IV 1957).

Pertinent regulations may be found in 39 C.F.R. as §§ 36.1, 36.2 and 36.7, issued under 5 U.S.C.A. § 22 and 5 U.S.C.A. § 369 as follows:

"§ 22. Departmental regulations. The head of each department is authorized to prescribe regulations, not inconsistent with law, for the government of his department, the conduct of its officers and clerks, the distribution and performance of its business, and the custody, use, and preservation of the records, papers, and property appertaining to it."

"§ 369. Duties of Postmaster General. It shall be the duty of the Postmaster General:

\* \* \* \* \*

"Ninth. To superintend generally the business of the department and execute all laws relative to the Postal Service."

sidered as exhibits in an earlier action[2]; a preliminary injunction to the same effect pending final relief; and that the named issues be declared not to be obscene. Judge Kirkland denied relief, ruling that there was a substantial basis in fact and in law to support the Department's determination and, independently as trier, he concluded that the named issues, being obscene, are nonmailable.[3] After the appeal had here been argued, the court ordered rehearing *en banc*.[4]

Facts alleged, found and appearing of record may be succinctly summarized. About December 23, 1954, appellant Sunshine completed the printing of approximately 40,000 copies of the February, 1955, issue of the publication, "Sunshine & Health" of which 10,000 copies were to be circulated through the mails. Approximately 30% of the total circulation of the second publication, "Sun Magazine," was to be distributed through the mails. Appellants alleged that they receive a larger percentage of return on copies disseminated by mail to subscribers than from the sale of copies distributed by other means such as sales at news-stands. Between December 24, 1954, and December 31, 1954, appellant Sunshine Book Company caused some 400 copies of its February 1955 issue to be offered for mailing as third class matter through the post office at Mays Landing, New Jersey. The postmaster under date of December 29, 1954, submitted a sample copy of the questioned issue to the Solicitor for the Post Office Department for instructions, pursuant to the applicable regulation.[5] Under date of December 30, 1954, he was advised by the Solicitor that the questioned copies "subject to inspection" should be withheld from dispatch and that the senders should be informed that they might have "opportunity to show cause within fifteen days why the article should not be disposed of as matter nonmailable under * * * 39 C.F.R. 36.2." Under date of December 31, 1954, the postmaster informed the senders as to the opportunity to be heard, but erroneously also wrote that the questioned issue "is nonmailable and must be withheld from dispatch." The Solicitor under date of January 6, 1955, advised the senders as to the postmaster's error and pointed out that no ruling or determination as to mailability had been made either by the Solicitor or by any authorized person, that a hearing had been assigned for January 10, 1955, and that "every effort will be made to insure an expeditious consideration and ruling in this matter." Similar notice was given to Solar Universale Nudisme Magazine of a hearing assigned for January 11, 1955, to determine the mailability of its January-February, 1955, issue of Sun Magazine. On January 10, 1955, the Hearing Examiner "at the request of counsel for the publisher and with the agreement of the Solicitor" continued

2. Summerfield v. Sunshine Book Company, 1954, 95 U.S.App.D.C. 169, 221 F.2d 42, certiorari denied 1955, 349 U.S. 921, 75 S.Ct. 661, 99 L.Ed. 1253, which involved a proceeding under 39 U.S.C.A. § 259a. There we concluded that the statute did not authorize the Postmaster General to predicate an order refusing mail privileges upon future, unpublished issues of the magazines despite the fact that past issues had contained allegedly obscene matter. Congress has since developed temporary and summary impounding procedures, free from the requirements of the Administrative Procedure Act, 5 U.S.C.A. § 1001 et seq., to be followed in such cases. See the Act approved July 27, 1956, 39 U.S.C.A. § 259b. See S.Rep. No. 2234, 84th Cong., 2d Sess., 2 U.S.Code & Ad.News, 1956, p. 3597. These sections are not involved in the instant case.

3. His opinion with its detailed findings and conclusions has been reported at length. See Sunshine Book Company v. Summerfield, D.C.D.C.1955, 128 F.Supp. 564.

4. We heard argument September 25, 1956. We decided to postpone our decision herein because of the pendency in the Supreme Court of several cases, the decisions in which were deemed likely to have an important, if not controlling, bearing on the problems here raised. See, e. g., Roth v. United States (Alberts v. California), 1957, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498; Kingsley Books, Inc. v. Brown, 1957, 354 U.S. 436, 77 S. Ct. 1325, 1 L.Ed.2d 1469.

5. C.F.R. § 36.7 and see supra note 1.

the hearings as to both magazines until January 17, 1955, when the hearings went forward. On appeal from the examiner's initial decision, the Solicitor affirmed January 28, 1955, reciting details as to the photographic contents of the questioned publications which he found were offered freely for sale to the general public.

Meanwhile, proceedings had been instituted in the District Court on January 6, 1955, and, on January 18, 1955, the motion for preliminary injunction was denied. It was then ordered that "the status quo" be maintained until the completion of the administrative proceedings and that the case be advanced for trial to be heard January 31, 1955. Accordingly, the case was then heard and after argument, the court's oral ruling was pronounced. Findings of fact and conclusions of law were thereafter filed, and the judgment dismissing the appellants' amended complaint was entered February 16, 1955.

In court the Department stood upon the record of the papers and opinions which had been filed in the administrative proceeding which, without objection, were received. The trier offered to hear testimony. Appellants presented no "live" witnesses, and had none in court. In colloquy with the trial judge appellants' counsel outlined the nature of such testimony as might have been produced: as to community standards; that the photographs do not violate such standards; that nudism is growing in American life, "for instance, in the home"; and analysis, comparatively, of some nude photographs in certain magazines and of the sequence in "La Tuka," a motion picture of African tribal life. The trier ruled the proffer was irrelevant in terms of American community life measured by legal standards as applied to the magazine issues before the court. Counsel, in effect, concluded: "This brings us, then, far quicker than I thought we would get there to the issue of obscenity." It was the issue in the District Court, and is the issue here.

■ The statute [6] under which the proceedings went forward not only makes criminal the use of the mails for the transmission of proscribed matter, including obscene, lewd or lascivious pictures or publications of an indecent character, but all such matter is declared to be "nonmailable" and "shall not be conveyed in the mails."

■ Appellants' contentions that the statute "usurps powers impliedly and expressly reserved to the states in violation of the First, Ninth, and Tenth Amendments to the United States Constitution" have been answered by the Court in Roth v. United States,[7] where it was held expressly that "obscenity is not within the area of constitutionally protected speech or press." The majority further said:

"Roth's argument that the federal obscenity statute unconstitutionally encroaches upon the powers reserved by the Ninth and Tenth Amendments to the States and to the people to punish speech and press where offensive to decency and morality is hinged upon his contention that obscenity is expression not excepted from the sweep of the provision of the First Amendment that *'Congress shall make no law * * * abridging the freedom of speech, or of the press * * *.'* (Emphasis added.) That argument falls in light of our holding that obscenity is not expres-

---

6. 18 U.S.C. § 1461 (1952), supra note 1, was later amended by the Act of June 28, 1955, 18 U.S.C. § 1461 (Supp. IV 1957). Congress sought "to enlarge section 1461 of title 18, United States Code, so as to include within the prohibition of said section all matter of obscene nature, whether or not said matter had fallen within the more restricted definition contained in the statute." S.Rep. No. 113 to accompany S. 600, 84th Cong., 1st Sess. U.S.Code Congressional and Administrative News 1955, page 2210. The Report further advised the Senate that passage of the bill "will contribute greatly in the continuing struggle to combat juvenile delinquency and the corruption of public morals."

7. 1957, 354 U.S. 476, 485, 77 S.Ct. 1304, 1309, 1 L.Ed.2d 1498.

sion protected by the First Amendment. We therefore hold that the federal obscenity statute punishing the use of the mails for obscene material is a proper exercise of the postal power delegated to Congress by Art. I, § 8, cl. 7."[8]

The command of the statute is such that if the issues of the magazines in question are nonmailable under 18 U.S.C. § 1461, the Post Office Department is bound to deny access to the mails.[9] Arguing that a conclusion of "obscenity" is a matter of *opinion*, appellants insist that the Postmaster General's order was invalid as a matter of law. The Court tells us however that, while there may be marginal cases, obscenity is recognizable and may be distinguished from the portrayal of sex in art, literature and scientific works. "Obscene material is material which deals with sex in a manner appealing to prurient interest." The Court observed that the trial court "sufficiently followed the proper standard," having applied the test "whether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest." Thus, the Court concluded:

"In summary, then, we hold that [the federal statute] applied according to the proper standard for judging obscenity, do[es] not offend constitutional safeguards against convictions based upon protected material, or fail to give men in acting adequate notice of what is prohibited."[10]

Here, the trial judge carefully reviewed the authorities and applied the test[11] we had laid down in Parmelee v. United States[12] and which was quoted verbatim in the Roth charge, approved by the Court. Supplied by the trial judge were extensive, particularized descriptions of the offending and offensive material which need not here be repeated, as they speak for themselves. We deem the conclusions reached by the trial judge to be amply sustained. Appellants argue to us that the issue of obscenity is "not foreclosed by the finding of the trial court and is to be independently reviewed and determined by this court." Were we, as is urged, to go beyond the trier and to reach our own conclusion, we would have no hesitancy in deciding that what is before us is "material which deals with sex in a manner appealing to prurient interest," and hence is obscene, as Roth tells us.

Appellants ask us to say that our earlier decision[13] is *res judicata*. Quite apart from the fact that the many issues of the publications there involved differ from the exhibits before us in no substantial particular so far as their common pattern of nudity is concerned, some of them were more, and some less offensive in their portrayal of sexual indicia than the photographs in the exhibits with which we are now concerned. Most important, however, we did not in the earlier case reach or decide any such issue. On the contrary, we were concerned solely with the scope of the order of the Postmaster General which, we concluded, exceeded his authority. Indeed, we ex-

8. Id. 354 U.S. at pages 491–492, 77 S.Ct. at page 1313.

9. Roth v. Goldman, 2 Cir., 1949, 172 F.2d 788, certiorari denied 1949, 337 U.S. 938, 69 S.Ct. 1514, 93 L.Ed. 1743; "It shall be the duty of the Postmaster General * * * to * * * execute all laws relative to the Postal Service." 5 U.S.C.A. § 369; as to the duty and power of the Postmaster General, compare Bates & Guild Co. v. Payne, 1904, 194 U.S. 106, 24 S.Ct. 595, 48 L.Ed. 894. Where the problem turns upon the exercise of judgment when the contents have not been found to be obscene, a wholly different case is presented. See, e. g., Hannegan v. Esquire, Inc., 1946, 327 U.S. 146, 149, 158, 66 S.Ct. 456, 90 L.Ed. 586.

10. 1957, 354 U.S. at page 492, 77 S.Ct. at page 1313.

11. Supra note 3, Sunshine Book Company v. Summerfield, 128 F.Supp. at page 568.

12. 1940, 72 App.D.C. 203, 113 F.2d 729.

13. Supra note 2.

pressly authorized him to amend his orders to conform to the limitations we defined, and we found it unnecessary to inquire into or to pass upon his finding as to obscenity. Since we did not decide that the orders lacked a predicate of obscenity, appellants' reliance upon *res judicata* is totally without basis.

Were we, as appellants asked, to refer to the many issues received as exhibits in the earlier cases, we might readily spell out a continuous pattern of dissemination of nude photographs, a pattern in existence for many years. We would not ignore Sunshine Book Co. v. McCaffrey [14] where the court at page 483 said:

"Where the dominant purpose of nudity is to promote lust, it is obscene and indecent. The distribution and sale of the magazines in this case is a most objectionable example. The dominant purpose of the photographs in these magazines is to attract the attention of the public by an appeal to their sexual impulses. The sales of these magazines is not limited to any mailing list of members or subscribers. They are sold and distributed indiscriminately to all who wish to purchase the same. Men, women, youths of both sexes, and even children, can purchase these magazines. They will have a libidinous effect upon most ordinary, normal, healthy individuals. Their effect upon the abnormal individual may be more disastrous."

■ Nor do we see in the circumstances here a "prior restraint" against which to inveigh. The statute declares certain matter to be nonmailable which "shall not be conveyed in the mails." It may be supposed that the Post Office Department is not bound to sit idly by if instruments of crime, proscribed as nonmailable, are nonetheless offered for mailing. We may assume that the Department is not bound to permit the crime to be committed and only thereafter to proceed against one who mails the offending material. Here, pursuant to the departmental regulations, the postmaster sought instructions. An administrative hearing was ordered which proceeded expeditiously, both before the Department and the District Court. After application of the pertinent and appropriate standard, the questioned exhibits were found to be nonmailable. Here, there was no interference with some 30,000 copies of the questioned issue of "Sunshine & Health," and with some 70% of the questioned issue of "Sun Magazine," distributed otherwise than through the mails. Here was no injunction restraining the contemplated distribution of the publications to the public at large. Rather, only after hearing in accord with procedural safeguards antecedent to a determination of nonmailability, the Postmaster General has ruled that the facilities of the Post Office Department are not to be utilized, and the offending material "shall not be conveyed in the mails." There was no seizure, there was no restraint upon "the dissemination of future issues of a publication because its past issues had been found offensive."[15]

We are satisfied that it has been correctly determined that the issues of the magazines here in suit comprise nonmailable matter within the meaning of the statute. There is no error.

Affirmed.

FAHY, Circuit Judge, concurring.

In addition to making it a crime to mail the matter it describes, the statute, 18 U.S.C. § 1461 (1952), declares the

14. Sup., 112 N.Y.S.2d 476. There the appellants likewise were plaintiffs who sought a declaratory judgment and a permanent injunction against the Commissioners of Police and of Licenses of the City of New York. Their publications "Sunshine & Health" and "Sun Magazine" were before the court and appellants had been charged with violating

§ 1141 of the Penal Law of New York, McKinney's Consol.Laws, c. 40, referred to in Kingsley Books, Inc. v. Brown, supra note 4, 354 U.S. at page 442, 77 S.Ct. at page 1328.

15. Kingsley Books, Inc., v. Brown, supra, note 4, 354 U.S. at page 445, 77 S.Ct. at page 1330.

matter to be nonmailable, and provides that it shall not be conveyed in the mails or delivered from any post office or by any letter carrier. Thus, as it seems to me, the statute is not solely a criminal one but is also one which closes the mail to obscene matter. This is not inconsistent with the First Amendment, Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 or beyond the federal power; so that even though there has been no conviction of crime, there is reached the question whether the matter is of the kind the statute describes as nonmailable. The standards for determining this have been laid down by the Supreme Court, and the Department was here governed by equivalent standards; the Department applied the standards of the "dominant theme" and of the "contemporary community."

I do not disagree with the conclusion reached. Pictures permeate the magazine and the pictures are dominated by those which the contemporary community deems indecent. If this is so it cannot be but immaterial that much innocent text also appears in the magazine.

This leaves the question whether the departmental procedure met the requirements of due process. In Kingsley Books, Inc. v. Brown, 354 U.S. 436, 77 S.Ct. 1325, 1326, 1 L.Ed.2d 1469, the Court sustained the New York "limited injunctive remedy" under the Fourteenth Amendment, applicable to state statute. I think the prompt and speedy administrative process accorded in the present case cannot be distinguished on a Fifth Amendment level, applicable to federal statute, from the procedure sustained in Kingsley Books. After the magazine was held, a longer time elapsed here than in that case before the nonmailable decision was reached; but the Department moved expeditiously—in fact appellant requested additional time.[1]

Further congressional attention to procedure might be desirable, but this is not to say that the courts should hold invalid the procedure here followed, unless it is to be held that only a court or jury is capable under the Constitution of determining in the first or preliminary instance the question of obscenity.

WASHINGTON, Circuit Judge, with whom EDGERTON, Chief Judge, and BAZELON, Circuit Judge, join (dissenting).

"Obscenity is not expression protected by the First Amendment." Roth v. United States, 1957, 354 U.S. 476, 492, 77 S.Ct. 1304, 1313, 1 L.Ed.2d 1498. "Obscenity, real, serious, not imagined or puritanically exaggerated, is today as in all the past centuries, a public evil, a public nuisance, a public pollution." Excelsior Pictures Corp. v. Regents of University of State of New York, 1957, 3 N.Y. 2d 237, 246, 165 N.Y.S.2d 42, 49. "The validity of the obscenity laws is recognition that the mails may not be used to satisfy all tastes, no matter how perverted." Hannegan v. Esquire, Inc., 1946, 327 U.S. 146, 158, 66 S.Ct. 456, 462, 90 L.Ed. 586. Well established though these propositions may be, they do not answer the hard questions of an individual case. Has the publication been found "obscene" by a proper tribunal, applying proper standards? Has the punishment or remedy been authorized by proper legislation?

In the instant case, these questions have not yet been adequately answered. In the first place, it is not at all clear that the Post Office Department possesses any power to censor any class of mail, sealed or unsealed. Certainly Congress has never given such a power in so many words, nor has the Supreme Court ever expressly recognized the existence of such a power. The authority under which the Department is said to be operating in this field is a criminal statute passed in 1873:[1] It contains no language which directs the Department to refuse

[1.] In Walker v. Popenoe, 80 U.S.App.D.C. 129, 149 F.2d 511, the order barring the pamphlet from the mails was issued without notice or hearing.

[1.] Rev.Stat. § 3893 (1875), as amended, 18 U.S.C. § 1461 (Supp. IV, 1957).

to transport and deliver newspapers and magazines pending final decision on its part as to whether their content is acceptable to it. "Some day Congress may perhaps give that authorization in specific terms, with proper guidance for and restrictions on administrative action, and with such safeguards as the Constitution may require. But Congress has not done so here." Summerfield v. Sunshine Book Co., 1954, 95 U.S.App.D.C. 169 at page 175, 221 F.2d 42 at page 48.[2] "All that Congress meant by this [1873] act was, that the mail should not be used to transport such corrupting publications and articles, and that any one who attempted to use it for that purpose should be punished." Ex parte Jackson, 1877, 96 U.S. 727 at page 736, 24 L.Ed. 877.

The postal power permits the Federal Government to impose criminal sanctions for using the mails to distribute obscene materials. Roth v. United States, supra. Such sanctions, of course, are accompanied by the safeguards of a jury trial. See Brennan, J., dissenting in Kingsley Books, Inc., v. Brown, 1957, 354 U.S. 436, 447, 77 S.Ct. 1325, 1 L.Ed.2d 1469. Prior restraint is another story. A state staute has been upheld which permitted a limited form of judicial prior restraint against materials alleged to be obscene, through temporary injunction followed by prompt trial. See Kingsley Books, Inc., v. Brown, supra. It may be that the postal power would provide a basis for a Federal statute authorizing a similar form of judicial control. But an administrative prior restraint, not plainly authorized by statute and not subject to specified standards and safeguards, is of highly doubtful validity, to say the least. Compare Holmby Productions, Inc., v. Vaughn, 1955, 350 U.S. 870, 76 S.Ct. 117, 100 L.Ed. 770; 350 U.S. 919, 76 S.Ct. 193, 100 L.Ed. 805, reversing 1955, 177 Kan. 728, 282 P.2d 412.

It may be argued that the duty of the Postmaster General "to execute all laws relative to the Postal Service," 5 U.S.C.A. § 369, gives him some measure of authority over materials deposited in the mail in alleged violation of the criminal statute. It may be said, too, that the statute makes the materials non-mailable, and forbids their handling. These arguments hardly suffice. Congress has always "zealously watched and strictly confined" any proposal to empower the Postmaster General to refuse to handle mail because of its content. See Hannegan v. Esquire, Inc., supra, 327 U.S. at page 156, note 18, 66 S.Ct. at page 461. Surely the courts must take a like attitude, even if they conclude that the present statute does give the Postmaster General some part of the authority he now claims.[3] Certainly, under any view, the courts must intervene if improper standards have been applied in making a determination of obscenity.[4] That has occurred in this case.

The test of obscenity is "whether to the average person, applying contemporary community standards, the *dominant* theme of the material *taken as a whole* appeals to prurient interest." (Emphasis added.) Roth v. United States, supra, 354 U.S. at page 489, 77 S.Ct. at page 1311.[5] We expressed a similar thought

---

**2.** We were there speaking of another postal statute, 39 U.S.C.A. § 259(a).

**3.** Cf. Roth v. Goldman, 2 Cir., 172 F.2d 788, certiorari denied, 1949, 337 U.S. 938, 69 S.Ct. 1514, 93 L.Ed. 1743; One, Inc., v. Olesen. 9 Cir., 241 F.2d 772, cert. pending, 26 U.S.L.Week 3046 (1957).

**4.** There is broad authority to review even factual matters when freedom of speech and of the press is involved. Cf. Niemotko v. State of Maryland, 1951, 340 U.S. 268, 271, 71 S.Ct. 325, 328, 95 L.Ed. 267, 280; Reed, J., concurring in Joseph Burstyn, Inc. v. Wilson, 1952, 343 U.S. 495, 506, 72 S.Ct. 777, 96 L.Ed. 1098; Dye, J., dissenting in Commercial Pictures Corp. v. Board of Regents of University of State of New York, 1953, 305 N.Y. 336, 356, 113 N.E.2d 502, 512, reversed sub nom. Superior Films v. Dept. of Education, 1954, 346 U.S. 587, 74 S.Ct. 286, 98 L.Ed. 329.

**5.** The test traditionally applied by the English courts was stated in Regina v. Hicklin [1868], L.R. 3 Q.B.D. 360, 371: "whether the tendency of the matter

in Walker v. Popenoe, 1945, 80 U.S.App. D.C. 129, 130, 149 F.2d 511, 512, where we said: "The statute [now 18 U.S.C. § 1461] does not bar from the mails an obscene phrase or an obscene sentence. It bars an obscene 'book, pamphlet * * * or other publication * * *.' If a publication as a whole is not stimulating to the senses [i. e., does not "arouse the salacity"] of the ordinary reader, it is not within the statute. * * * The *dominant* effect of an entire publication determines its character." (Emphasis in original.) See also Parmelee v. United States, 1940, 72 App.D.C. 203, 113 F.2d 729; United States v. Dennett, 2 Cir., 1930, 39 F.2d 564, 76 A.L.R. 1092; United States v. One Book Entitled Ulysses, 2 Cir., 1934, 72 F.2d 705; United States v. Levine, 2 Cir., 1936, 83 F.2d 156. In these cases, works which the courts found to be of genuine sociological, medical, or literary merit were held not obscene, although portions of them, taken from context, might appear otherwise.

In the instant case, the magazines "advocate and explain nudism and the nudist mode of living." Summerfield v. Sunshine Book Co., 95 U.S.App.D.C. at page 170, 221 F.2d at page 43. One of the magazines has been published for over twenty years. Their texts were found by the Post Office Department and the District Court not to be obscene. But both the Department and the District Court thereupon proceeded to deal with the illustrations in the magazines merely as such. The Examiner of the Post Office Department and the District Court explicitly recognize in their opinions that the publications must be considered as a whole.[6] Yet an examination of their opinions, as well as that of the Solicitor of the Post Office Department, shows no effort to weigh the material considered objectionable against the rest of the contents, or to weigh the risk in permitting the former to circulate against the limitations on freedom of the press implicit in halting circulation of the latter.[7]

Another aspect of the case is equally disturbing. More than a decade ago we held in Walker v. Popenoe, supra, that a hearing must precede the barring of published matter from the mails. Here, the Department refused to accept the magazines for mailing, and held a hearing after its refusal had become effective.[8]

---

charged as obscenity is to deprave and corrupt those whose minds are open to such immoral influences, and into whose hands a publication of this sort may fall." But see Regina v. Martin Secker Warburg, Ltd. [1954], 2 All E.R. 683. That test "might well encompass material legitimately treating with sex, and so it must be rejected as unconstitutionally restrictive of the freedoms of speech and press." Roth v. United States, 354 U.S. at page 489, 77 S.Ct. at page 1311.

6. See Walker v. Popenoe, supra at page 130 of 80 U.S.App.D.C., at page 512 of 149 F.2d.

7. It is also questionable whether finding a picture "grotesque" sufficiently complies with the Supreme Court's mandate requiring a finding of appeal to "prurient interest." Compare Sunshine Book Co. v. Summerfield, D.C.D.C.1955, 128 F.Supp. 564, 571, with Roth v. United States, 1957, 354 U.S. at page 489, 77 S.Ct. at page 1311.

8. The District Judge found that the refusal of the Post Office Department to transmit the magazines in question began on or about December 23, 1954. By letter of December 30, 1954, the Solicitor of the Post Office Department acknowledged a letter of December 29, 1954, from the Postmaster of Mays Landing, New Jersey, which set forth the action taken. The Solicitor advised that the magazines "should be withheld from dispatch," except for copies submitted for first class mailing, and that the senders "should be informed that they may have an opportunity to show cause within fifteen days why the article should not be disposed of as matter nonmailable . . . by offering through appearance at this [the Solicitor's] office in person or by attorney, or through submission of a statement in writing, whatever evidence or arguments they care to submit."

The Postmaster of Mays Landing transmitted this information to appellant by letter of December 31, 1954. He added that the magazines in question were "nonmailable and must be with-

We expressly condemned such an interference with freedom of the press in the Walker case, where we said:

"We are not impressed with the argument that a rule requiring a hearing before mailing privileges are suspended would permit, while the hearing was going on, the distribution of publications intentionally obscene in plain defiance of every reasonable standard. In such a case the effective remedy is the immediate arrest of the offender for the crime penalized by this statute. Such action would prevent any form of distribution of the obscene material by mail or otherwise. If the offender were released on bail the conditions of that bail should be a sufficient protection against repetition of the offense before trial. But often mailing privileges are revoked in cases where the prosecuting officers are not sure enough to risk criminal prosecution. That was the situation here." 80 U.S.App.D.C. at page 132, 149 F.2d at page 514.[9]

For these reasons the order of the Post Office Department should be held invalid. Under all the circumstances—the passage of time and the disregard by the Post Office Department of our ruling in the Walker case—further administrative proceedings with respect to the magazine issues here involved should not be permitted. The case should be remanded to the District Court with instructions to issue an injunction permanently restraining enforcement of the Department's order.

held from dispatch." By letter of January 6, 1955, to appellant, the Solicitor acknowledged that the Postmaster's statement as to nonmailability was in error, "no ruling or determination either of mailability or non-mailability having yet been made. . . ." He also gave notice of a hearing on the question to be held on January 10, 1955. But no action was taken to transmit the magazines in the mail. At appellant's request, the hearing was postponed to January 17, 1955. At the hearing, the Examiner ruled, correctly, we think, and without

objection by the Post Office Department, that the burden of proof rested on the Post Office Department rather than appellant. An initial decision was handed down by the Examiner on January 20, 1955, and affirmed by the Solicitor on January 28, 1955. It is thus evident that appellant's magazines were barred from the mails for almost a month before the hearing and the initial administrative decision that they were unmailable.

9. See Roth v. United States, 1956, 77 S.Ct. 17, 1 L.Ed.2d 34 (per Harlan, Circuit Justice).