Forest James **ACKERMAN**, Appellant,

v.

**UNITED STATES of America,**
**Appellee.**

**No. 17252.**

United States Court of Appeals
Ninth Circuit.

Aug. 18, 1961.

Ziskind & Ross by David Ziskind, of Los Angeles, Cal., for appellant.

Laughlin E. Waters, U. S. Atty., Thomas R. Sheridan, Asst. U. S. Atty., Chief, Criminal Division, Edward M.

Medvene, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before BARNES and KOELSCH, Circuit Judges, and SWEIGERT, District Judge.

SWEIGERT, District Judge.

On March 16, 1960, the Grand Jury for the Southern District of California returned a five-count indictment against the appellant, charging in counts 1 through 5, respectively, that appellant on five separate occasions mailed letters which were obscene, lewd, indecent, lascivious and filthy in violation of Title 18, United States Code, Section 1461.

Upon plea of not guilty, appellant waived trial by jury and requested the Court to decide the issues involved upon the basis of a stipulation of facts.

The Court on October 4, 1960, upon the stipulated facts and the briefs of both parties, found appellant guilty as charged and subsequently imposed a fine of $50 on each count of the indictment.

The jurisdiction of the District Court was based upon Title 18, United States Code, Section 3231 and Title 18, United States Code, Section 1461. Appellant filed a timely notice of appeal and jurisdiction of this Court is predicated upon Title 28, United States Code, Sections 1291 and 1294.

The Stipulation of Facts sets forth that from May through October, 1958, appellant Ackerman sent five letters to one R. W. Hearn; that, if called as a witness, said R. W. Hearn would testify that he received said letters; that if called as a witness, defendant Ackerman would testify under oath that he is 43 years of age and is engaged in the occupation of writer and literary agent; that he was at one time a literary agent for over one hundred authors; that his own fiction and non-fiction articles and stories have appeared in over 150 internationally distributed periodicals and magazines; that during the year 1958, he embarked on a project involving research in the field of lesbianism and homosexuality for the purpose of providing background material for a publication on the subject of lesbianism; that defendant Ackerman would further testify under oath that said R. W. Hearn at all times represented to Ackerman that said R. W. Hearn was a lesbian and that Ackerman believed that the said Hearn was, in fact, a lesbian; that said R. W. Hearn was in fact a man aged 38, married and the father of two children; that said Hearn had, previous to the commencement of the correspondence, been in correspondence with other people on the subject of lesbianism and had been receiving and sending correspondence similar to that hereinabove referred to, and that said Hearn had accumulated a sizable collection of such material; that, if called as a witness, defendant would testify that he received no pecuniary advantage or remuneration by reason of the correspondence; that if called as witnesses, six named persons would testify with respect to the character and reputation of the defendant as set forth in their respective letters.

The stipulation further recited that the defendant did not admit that any of the letters were obscene, lewd, indecent, lascivious or filthy, reserving all questions of law relating thereto; and, further, that the government did not waive its objection to the materiality of Stipulations Nos. 10 and 13.

The letters contained certain pictures which, according to oral stipulation at the hearing, defendant would testify were received by him from R. W. Hearn and were being returned to Hearn.

Title 18, U.S.C. Sec. 1461 provides in pertinent part as follows:

"Every obscene, lewd, lascivious, indecent, filthy or vile article, matter, thing, device or substance * * * is declared to be nonmailable matter and shall not be conveyed in the mails or delivered from any post office or by any letter carrier.

"Whoever knowingly uses the mails for the mailing, carriage in the mails, or delivery of anything declared by this section to be nonmailable, or knowingly causes to be

delivered by mail according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, or knowingly takes any such thing from the mails for the purpose of circulating or disposing thereof, or of aiding in the circulation or disposition thereof, shall be fined not more than $5,000 or imprisoned not more than five years, or both, for the first such offense, * * * "

Appellant contends:

1. That if the statute be construed as prohibiting an exchange of non-commercial private letters between a serious writer and another adult person, dealing with abnormal sex, a subject of redeeming social importance for research purposes, then the statute would be invalid as an infringment of the First Amendment—right of free speech.

2. That the average person standard for determining obscenity, as declared in Roth v. United States, 1957, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498, does not encompass such material under such circumstances.

3. That the potential social evil, which the statute was intended to prevent, is absent in such a case.

4. That the evidence in the pending case is insufficient to establish the essential element of appeal to prurient interest.

5. That it is insufficient to establish the essential element of scienter.

In Roth v. United States, 1957, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498, the Supreme Court recognized that sex and obscenity are not synonymous, that the portrayal of sex in art, literature and scientific works is not itself sufficient to deny material the constitutional protection of freedom of speech and press, and that the standards for determining obscenity must safeguard the publication of material which does not treat sex in a manner appealing to prurient interest.

Further, the Courts have recognized that the writings of serious authors on subjects of public concern are not to be judged merely by selected words or phrases but according to whether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole, appeals to prurient interest. Roth v. United States, supra; United States v. Dennett, 2 Cir., 1930, 39 F.2d 564, 76 A.L.R. 1092; Grove Press v. Christenberry, 2 Cir., 1960, 276 F.2d 433; Walker v. Popenoe, 80 U.S.App.D.C. 129, 149 F.2d 511 (D.C.Cir., 1945); United States v. One Book Entitled Ulysses, 2 Cir., 1934, 72 F.2d 705.

■ Although a court of review retains responsibility for rendering the ultimate judgment upon Constitutional infringement, the question (whether the dominant theme of material taken as a whole, would be to the average person applying contemporary standards, an appeal to prurient interest) is primarily one of fact for the jury or trial judge sitting without a jury, to decide.

■ In the pending case, the trial judge, upon the stipulation of facts, including the letters and pictures themselves, impliedly found beyond a reasonable doubt that the material would be such an appeal to prurient interest and that it was, therefore, obscene within the meaning of the statute.

That this judgment was amply supported, and that the standard of obscenity laid down by Roth v. United States, supra, has been met by the proof, is in our opinion beyond question.

The letters, themselves (Ex. 1 through 5) do not purport, either by their content or their form, to be artistic, literary, scientific or any other kind of serious expression upon the subject of sex. On the contrary, they are filled with wildly erotic, filthy, prurient comments and inquiries concerning the details of the addressee's private parts, which could have no conceivable worth for artistic, literary, scientific or serious research. Further, they are couched, not in the restrained form of serious inquiry and comment, or even in the form of customary candor on the subject of sex, but in the form

of vulgar, sordid, provocative, erotic imagery and evident prurient appeal—so much so that we deem it improper and unnecessary to quote from them.

The pictures, which were enclosed and referred to in the letters, are likewise without artistic, scientific or other redeeming value and their form and content fall into the same category as the letters which refer to them. They are obviously useless—except for purpose of a highly provocative sexual arousement and prurient appeal.

In the light of the dominant theme of the letters and pictures themselves, the trial judge would have been justified in treating the stipulated testimony of the defendant, concerning his claimed 1958 research project on lesbianism as inherently improbable or even if true, as unrelated to these particular letters.

The Court is mindful of One, Inc. v. Olesen, 9 Cir., 1957, 241 F.2d 772, wherein this Court, affirming the District Court, held that an issue of a magazine purportedly published to promote an interest, knowledge and understanding of sex variations, homosexuality and lesbianism, was obscene within the meaning of Sec. 1461—a holding that was reversed by the Supreme Court, per curiam, 1958, 355 U.S. 371, 78 S.Ct. 364, 2 L.Ed.2d 352, upon the authority of Roth v. United States, supra, which had been meantime decided.

A reading of this Court's opinion in One, Incorporated, indicates that the reversal was upon the ground that the lower courts had applied an improper test in determining the material to be obscene. See: Eastman Kodak Co. v. Hendricks, 9 Cir., 1958, 262 F.2d 392, 396. We further believe, however, that the material involved in that case, so far as disclosed by the opinion, was not comparable with the material here, which we consider to be a more serious and shocking example of obscenity within the extreme category of "hard core pornography" discussed by Harlan, J., in his dissent in Roth. [354 U.S. 476, 77 S.Ct. 1321.]

The judgment, therefore, should be affirmed unless there is merit to defendant's further contentions.

Stressing the stipulated testimony of the defendant that he received no pecuniary advantage or remuneration for the letters and the stipulated fact that the letters were an exchange of private correspondence between adults, and the further stipulated testimony of defendant concerning the addressee Hearn, defendant argues that the so-called average person test for obscenity, laid down in Roth v. United States, supra, is inapplicable.

Pointing out that the Court in Roth was considering material used for general public sale, defendant argues that its average person test was not intended for cases of non-commercial private correspondence of this kind, that such a test does not make good sense in evaluating material privately mailed because what to the average person is an appeal to prurient interest may not be to the addressee of private correspondence. The test in such a case should be, defendant contends, whether the material was an appeal to the prurient interest of the only person likely to receive it—in this case, the addressee—R. W. Hearn.

■ It may well be that the principal object of the statute, Sec. 1461, was to prevent the commercial exploitation of psycho-sexual tension (House Rep. No. 690, 84th Cong., (6/1/55), Senate Report, No. 113, 84th Congress, Committee on Judiciary (3/10/55); American Law Institute, Model Penal Code, tentative Draft No. 6, 1957, p. 5). The statute, however, contains no such limitation or exemption and it is entitled to the presumption that Congress either had other, broader social objectives in mind or considered that the attainment of its main objective would be unreasonably frustrated by any such limitation.

■ That the statute includes private correspondence is also clear. The statute of July 12, 1876, Ch. 186, 19 Stat. 90, did not in terms include letters and was construed as not including them (United States v. Chase, 1880, 135 U.S. 255, 10

S.Ct. 756, 34 L.Ed. 117). It was amended, September 26, 1888, (Ch. 1039, Sec. 2, 25 Stat. 496) to include letters and, thereafter, has been held to include private sealed letters even though nothing appears on the envelope but the name and address. Andrews v. United States, 1896, 162 U.S. 420, 16 S.Ct. 798, 40 L.Ed. 1023. The amendment of June 28, 1955, which substituted the general language "article, matter, thing, device or substance" for the previous specification of "letters" and other items, was intended, not to narrow, but to enlarge the scope of the statute to include *all matter* (emphasis added) of obscene nature, whether or not it had previously fallen within the statutory enumeration of items. 2 U.S. Code Cong. & Adm.News, p. 2210 (1955).

The question remains, however, whether the so-called average person standard for determining obscenity, declared in Roth, was intended for cases involving non-commercial private correspondence.

Although the Court in Roth was dealing with a case involving the mailing of circulars, advertising and a book, not with private letters, the Court was dealing with the very statute here involved, which had prior to the opinion, been held to include letters. The majority opinion purports to declare the standard for determining obscenity under this statute. It does not indicate any intention to restrict that declared standard to obscene circulars, advertising or books as distinguished from private letters.

On the contrary, in declaring the average person standard, the Court rejected the so-called Hicklin test under which obscenity was judged merely by the effect of isolated passages upon particularly susceptible persons, or a particular segment of the community, pointing out that such a standard might well encompass material legitimately treating with sex and would unconstitutionally restrict the freedom of speech.

"On the other hand," the Court stated, "the substituted standard provides safeguards adequate to withstand the charge of constitutional infirmity," (354 U.S. at

page 489, 77 S.Ct. at page 1311) and "in summary, then, we hold that these statutes, applied according to the proper standard for judging obscenity, do not offend constitutional safeguards against convictions based upon protected material, or fail to give men in acting adequate notice of what is prohibited." (354 U.S. at page 492, 77 S.Ct. at page 1313).

We recognize, of course, that the potential harm to public dignity and morals is less in the case of the private letter than in the case of the commercial book or pamphlet because the addressee of a letter is generally the only one likely to see it. Gravity of harm has, however, been rejected by the Supreme Court as a test in obscenity cases, Roth, supra, under the theory that obscenity is so anti-social and devoid of any social value, that it is outside the First Amendment area of protection. That being so, we believe the test evolved in Roth remains the same to be applied under these facts as well.

To hold otherwise, and to qualify the Roth standard, as defendant suggests, in cases involving non-commercial private correspondence, would facilitate one of the mischievous and reprehensible practices, which the statute was designed to prevent—the indiscriminate mailing of filthy and obscene, although purportedly private letters by crackpots or perverts whose convictions would be made to depend, not upon any general standard of obscenity, but upon the reactions and views of particular addressees.

In practical result, some writers of such obscene letters would escape conviction, while others would not, depending on whether the particular reader of the letter reacts with prurient interest, or instead with disgust or resentment. Furthermore, well-intentioned writers of letters which might be susceptible to misconstruction by their recipients, would be endangered by prosecution, according to the reaction of the addressee.

As said in Cain v. United States, 5 Cir., 1960, 274 F.2d 598, certiorari denied, 1960, 362 U.S. 952, 80 S.Ct. 864, 4 L.Ed. 2d 869, upholding the government's con-

454

tention that whether letters were written in lust or anger, or whether they did or did not have the effect of exciting lustful thought in the person to whom they were addressed, was wholly immaterial: "Vile, indecent and filthy, * * * as they were upon their face, wholly without regard to whether the effect upon the recipient was or was not the one intended by the defendant, their sending violates the prohibitions of the law." (274 F.2d at page 600).

These considerations dispose of appellant's contention that the stipulated evidence in this case fails to establish an appeal to prurient interest and also dispose of the further contention that the evidence fails to establish "scienter".

In our view, the scienter required is established by appellant's knowledge as the writer of the letters, that they were obscene within the meaning of Section 1461 when construed according to the standard declared in Roth.

The judgment below is affirmed.